IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 16, 2017 Session

## CRAIG ROBERT NUNN v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

### Direct Appeal from the Chancery Court for Davidson County
No. 10-1583-IV     Russell T. Perkins, Chancellor

### No. M2016-01518-COA-R3-CV

This case involves a sex offender's complaint for declaratory relief under state law and 42 U.S.C. § 1983 raising various constitutional and other challenges to the conditions imposed on him in accordance with his sentence to community supervision for life. The trial court found that most of the offender's constitutional claims were time-barred. The trial court reviewed the substantive merit of the remaining claims and found them meritless. As a result, the trial court granted the motion for summary judgment filed by the defendants, the Tennessee Department of Correction and the Tennessee Attorney General. The offender raises numerous issues on appeal. We affirm in part, reverse in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part, and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, J., joined.

David Louis Raybin, Nashville, Tennessee, for the appellant, Craig Robert Nunn.

Herbert H. Slatery III, Attorney General and Reporter, Andrée S. Blumstein, Solicitor General, Scott C. Sutherland, Deputy Attorney General, and Brooke K. Schiferle, Assistant Attorney General, Nashville, Tennessee, for the appellees, Tennessee Department of Correction, and Herbert H. Slattery III, Attorney General.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On January 14, 1999, Craig Nunn pled guilty to four counts of aggravated sexual

battery against four minor children who were patients at a hospital where he worked as a physician. The four incidents of aggravated sexual battery occurred between December 1997 and February 1998. Nunn received four concurrent sentences of twelve years to be served in the Tennessee Department of Correction. He was also sentenced to community supervision for life pursuant to Tennessee Code Annotated section 39-13-524, which, at the time, provided, in relevant part:

> (a) In addition to the punishment authorized by the specific statute prohibiting the conduct, any person who, on or after July 1, 1996, commits a violation of § 39-13-502, § 39-13-503, § 39-13-504 [aggravated sexual battery], § 39-13-522, or attempts to commit a violation of any of these sections, shall receive a sentence of community supervision for life.[1]
>
> . . . .
>
> (c) The sentence of community supervision for life shall commence immediately upon the expiration of the term of imprisonment imposed upon the person by the court or upon the person's release from regular parole supervision, whichever first occurs.
>
> (d)(1) A person on community supervision shall be under the jurisdiction, supervision and control of the Board of Paroles in the same manner as a person under parole supervision.[2] The board is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person.
>
> . . . .

Essentially, the lifetime supervision requirement of Tennessee Code Annotated section 39-13-524 "imposes an additional set of restrictions and requirements on the offender *after* serving his or her entire sentence of incarceration." *Ward v. State*, 315 S.W.3d 461, 476 (Tenn. 2010). The Tennessee Supreme Court has described the lifetime community supervision requirement as "punitive in effect, requiring an offender to regularly report to a parole officer who is granted wide discretion in imposing supervisory requirements, and to pay a monthly fee."[3] *Id.* at 474. Pursuant to a related statute, Tennessee Code

---

[1] "The crimes that warrant lifetime community supervision are all quite serious felonies[.]" *Bush v. State*, 428 S.W.3d 1, 21 (Tenn. 2014).

[2] The statute was later amended to substitute "Board of Probation and Parole" for "Board of Paroles." 1998 Tenn. Pub. Acts, c. 1049, § 11. For clarity, we will refer to the Board as the Board of Probation and Parole throughout this opinion.

[3] Although Tennessee Code Annotated section 39-13-524 provides for a sentence of "community supervision for life," Tennessee Code Annotated section 39-13-525(a) provides that "[a]fter a person sentenced to community supervision pursuant to § 39-13-524 has been on supervision for a period of fifteen (15) years, the person may petition the sentencing court for release from community supervision." If the petitioner has not been convicted of a criminal offense while under community supervision, the

Annotated section 39-13-526, a knowing violation of a condition of community supervision will constitute a separate criminal offense. Tenn. Code Ann. § 39-13-526(a)(4).

Approximately three months after Nunn pled guilty, on April 26, 1999, the Tennessee Board of Probation and Parole adopted "Sex Offender Directives" that established specialized conditions of community supervision for sex offenders. For example, the Sex Offender Directives required offenders to participate in counseling and polygraph tests and prohibited them from accessing the internet without approval or possessing alcohol. The Board of Probation and Parole granted supervising officers some discretion in imposing the conditions as deemed appropriate based on the particular offender's risks and needs.

Nunn was released from serving his twelve-year sentence on March 28, 2009. On that same date, Nunn was placed on community supervision for life. According to Nunn, as he was being released from prison, the institutional parole officer placed him on the sex offender community supervision regime over his objection. Nunn signed a "Community Supervision Certificate" agreeing to abide by the Sex Offender Directives adopted by the Board of Probation and Parole, but he wrote beside his signature "under protest." Days later, on March 31, 2009, Nunn met his supervising officer, who had him also sign a copy of the Sex Offender Directives containing the detailed list of specialized conditions of supervision for sex offenders. The Sex Offender Directives required Nunn to submit to curfews or electronic monitoring imposed by his supervising officer and to participate in counseling or treatment and polygraphs as deemed necessary. The Sex Offender Directives prohibited Nunn from possessing pornographic material, possessing alcohol, accessing the internet without permission from his supervising officer, working at an organization that provided services to minor children, or befriending anyone with minor children. The Sex Offender Directives provided that these conditions of supervision were "guidelines . . . established for all offenders" and would apply to Nunn unless either the Board of Probation and Parole or his supervising officer and treatment provider determined otherwise, and if he did not agree with any condition, he could petition the Board for a modification.

Approximately eighteen months later, on September 29, 2010, Nunn filed a complaint for declaratory relief against the Board of Probation and Parole and the Tennessee Attorney General challenging the Sex Offender Directives as applied to him,

court must conduct a hearing on the petition and "call such witnesses, including the examining psychiatrist or licensed psychologist with health service designation or the prosecuting district attorney general, as the court deems necessary to reach an informed and just decision on whether the petitioner should be released from community supervision." Tenn. Code Ann. § 39-13-525(d)(2). The petitioner may also offer witnesses and other proof at the hearing. *Id.*

on several grounds.[4]  Nunn's complaint described his suit as one "for declaratory relief pursuant to Tenn. Code Ann. § 29-14-102 [Tennessee's Declaratory Judgment Act] and a violation of civil rights pursuant to 42 U.S.C. § 1983."  Nunn acknowledged that he was sentenced to community supervision for life but claimed that the *conditions* of his supervision were fixed at the time of his offense and could not be made more harsh or severe thereafter.  He claimed that the Sex Offender Directives adopted in 1999, months after he pled guilty, could not be applied to his community supervision for life.  Nunn asked the trial court to declare that this application of Tennessee Code Annotated sections 39-13-524 and -526 and the Sex Offender Directives violated numerous provisions of the United States and Tennessee Constitutions regarding ex post facto laws, due process, equal protection, cruel and unusual punishment, self-incrimination, and separation of powers.  In addition to citing Tennessee's Declaratory Judgment Act, he asked the court to also grant him declaratory relief pursuant to 42 U.S.C. § 1983 in order to remedy these constitutional violations and "the deprivation of civil rights under color of state law."  Nunn did not seek monetary damages except for an award of attorney's fees and litigation costs pursuant to 42 U.S.C. § 1988.

The Board of Probation and Parole and Attorney General filed an answer, and discovery ensued.  Effective July 1, 2012, while the case was still pending, Tennessee Code Annotated section 39-13-524 was amended to provide that individuals subject to community supervision for life would be under the jurisdiction and supervision of the Tennessee Department of Correction rather than the Board of Probation and Parole.  *See* 2012 Tenn. Pub. Acts, c. 727, § 5 (replacing "board of probation and parole" with "Department of Correction" in the statutory text).  Consequently, on August 20, 2012, the parties entered into an agreed order providing that the Department of Correction would be substituted as a party defendant in the place of the Board of Probation and Parole.  On October 10, 2014, the parties entered into another agreed order permitting Nunn to file an amended complaint.

Nunn's amended complaint stated that it was filed as a suit for declaratory judgment pursuant to Tennessee Code Annotated section 4-5-225 of the Uniform Administrative Procedures Act and for declaratory relief pursuant to 42 U.S.C. § 1983.[5]

---

[4]Although Nunn is also required to register with the Tennessee Sexual Offender Registry, he emphasizes that he is not challenging the sex offender registry in this case.

[5]Tennessee Code Annotated section 4-5-225 states,

> (a) The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the complainant. The agency shall be made a party to the suit.

Nunn's amended complaint set forth fifteen counts or claims alleging various violations of constitutional provisions, the Uniform Administrative Procedures Act, and 42 U.S.C. § 1983. Specifically, two of the counts addressed the Uniform Administrative Procedures Act. Twelve counts asserted the following constitutional violations:

1. Ex post facto violations under the United States and Tennessee Constitutions;

2. Separation of powers violation under the Tennessee Constitution;

3. Violation of his due process right to earn a living under the United States and Tennessee Constitutions;

4. Cruel and unusual punishment under the United States and Tennessee Constitutions;

5. Violation of equal protection under the United States Constitution;

6. Violation of the self-incrimination clauses of the United States and Tennessee Constitutions;

7. Void for vagueness under the United States and Tennessee Constitutions;

8. Unlawful bill of attainder under the United States and Tennessee Constitutions;

9. Additional ex post facto and separation of powers violations;

---

(b) A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order.
(c) In passing on the legal validity of a rule or order, the court shall declare the rule or order invalid only if it finds that it violates constitutional provisions, exceeds the statutory authority of the agency, was adopted without compliance with the rulemaking procedures provided for in this chapter or otherwise violates state or federal law.

Nunn did not proceed under this section in his original complaint, nor did he petition the Board of Probation and Parole for a declaratory order, because Tennessee Code Annotated section 4-5-106(c) provides that section 4-5-225 "shall not apply to . . . the board of parole." After the Department of Correction assumed jurisdiction over persons subject to community supervision for life in 2012, Nunn petitioned the Department of Correction for a declaratory order regarding the Sex Offender Directives, and the Department declined to issue a declaratory order, as authorized by Tennessee Code Annotated section 4-5-223(a)(2) and -225(b).

10. Violation of his right to travel under the privileges and immunities clause and due process clause of the United States Constitution;

11. Violation of due process rights and an unconstitutional taking due to the impact on his family;

12. Violation of due process in connection with the mandatory therapy requirement.

Finally, the "pendant civil rights claim" alleged that these same alleged violations of the United States Constitution also constituted violations of 42 U.S.C. § 1983, as the State of Tennessee deprived him of "rights, privileges, or immunities secured by the [Constitution]" within the meaning of section 1983. Nunn claimed that he was entitled to declaratory relief pursuant to § 1983 due to the deprivation of his civil rights under color of state law. He sought attorney's fees pursuant to 42 U.S.C. § 1988.

The Department of Correction and Attorney General ("Defendants") filed an answer to Nunn's amended complaint and asserted that his claims were time-barred by the applicable statute of limitations. Thereafter, the Defendants filed a motion for summary judgment asserting that the statute of limitations had expired for all of Nunn's declaratory claims asserting constitutional violations except the one regarding separation of powers. Initially, the Defendants argued that Nunn's claims pursuant to 42 U.S.C. § 1983 were subject to the one-year statute of limitations applicable to federal civil rights claims set forth in Tennessee Code Annotated section 28-3-104(a). Next, the Defendants argued that Nunn's claims for declaratory relief pursuant to *state law* were not subject to any particular statute of limitations simply based on their nature as declaratory judgment actions, as declaratory judgment actions are merely a procedural device for asserting substantive claims. Accordingly, the Defendants contended that it was necessary to look to the nature of the underlying substantive claims in order to determine the statute of limitations applicable to the claims for declaratory relief. Because Nunn sought declaratory relief pursuant to state law and asserted his section 1983 claim based on the same underlying alleged violations of his federal constitutional rights, the Defendants claimed that the one-year statute of limitations applicable to his 1983 claim should also apply to his claims for declaratory relief under state law alleging federal constitutional violations. In addition, the Defendants argued that the same one-year statute of limitations for section 1983 actions should likewise apply to Nunn's declaratory claims for violations of the Tennessee Constitution, as they also alleged violations of his civil rights. While also suggesting an earlier date, the Defendants argued that the one-year statute of limitations began to run, at the latest, when Nunn was released from prison on March 28, 2009, and placed under supervision pursuant to the 1999 Sex Offender Directives, as he admittedly signed the necessary paperwork under protest. (Nunn's

6

complaint was filed eighteen months later.)

The Defendants did not argue that Nunn's claims regarding the UAPA and separation of powers were time-barred. Instead, the Defendants analyzed the substantive merit of these claims and argued that they were entitled to summary judgment on these issues. As an alternative basis for summary judgment, the Defendants also analyzed the substantive merit of the constitutional claims that they asserted were time-barred and argued that they were entitled to summary judgment with regard to the merits of those issues as well. The Defendants submitted numerous documents as exhibits in support of their motion for summary judgment.

Nunn filed a response and cross-motion for partial summary judgment. Nunn conceded that the Sex Offender Directives were imposed on him as he left prison on March 28, 2009, and argued, "The date from which the statute of limitation must be marked is March 28, 2009." However, he claimed that Tennessee's general ten-year statute of limitations applied to his claims for declaratory relief. Nunn acknowledged that he was seeking "declaratory relief under state declaratory judgment statutes and pendant claims under federal statutes permitting identical declaratory relief." Still, he insisted that his section 1983 claim was irrelevant to his "state law declaratory relief claim, albeit citing federal constitutional violations." Nunn also asserted that the "continuing violation" doctrine would apply to his section 1983 claim because the enforcement of the conditions of supervision for sex offenders had become increasingly harsh in recent years. Nunn further analyzed each of the substantive claims asserted in his complaint and argued that it was inappropriate to grant summary judgment to the Department based on the merits of those claims. In fact, he asserted that he was entitled to partial summary judgment on his ex post facto claim. Nunn submitted a host of exhibits in support of his response and cross-motion for partial summary judgment, with the exhibits spanning more than three volumes of the technical record on appeal.

Following a hearing, the trial court entered an order granting the motion for summary judgment filed by the Defendants and denying the motion for partial summary judgment filed by Nunn. First, the trial court concluded that the one-year statute of limitations provided in Tennessee Code Annotated section 28-3-104(a)(1)(B) applied to Nunn's claims pursuant to section 1983 seeking declaratory relief based on federal constitutional violations. Looking to the substantive nature of the remaining claims, the trial court found that Nunn was seeking declaratory relief under state law based on the same alleged violations of his federal constitutional rights that supported his 1983 claims, "along with parallel violations of the Tennessee Constitution." As such, the trial court concluded that the same one-year statute of limitations applied to all of Nunn's civil rights claims, whether based on the United States or Tennessee Constitution. The court found that Nunn knew he was subject to the 1999 Sex Offender Directives when he was

7

released from prison on March 28, 2009, and therefore, the one-year statute of limitations expired in March 2010. Because Nunn filed his complaint in September 2010, the trial court found that his civil rights claims under the federal and state constitutions were time-barred.[6] Despite Nunn's insistence that all of his constitutional claims were "as applied" challenges,[7] the trial court construed two of Nunn's claims -- based on separation of powers and vagueness -- as "facial challenges," and the court analyzed the substantive merit of those two claims. It also analyzed Nunn's claims under the UAPA. Finding no merit in any of Nunn's claims regarding these issues, the trial court also entered summary judgment in favor of the Defendants on these claims. As an "alternative analysis," the trial court analyzed the substantive merit of Nunn's ex post facto claim and concluded that he had not demonstrated any ex post facto violation. Nunn timely filed a notice of appeal.

## II. ISSUES PRESENTED

Nunn raises the following issues, as we perceive them, for review on appeal:

1.  Whether Nunn's suit for declaratory relief pursuant to Tennessee Code Annotated section 4-5-225 was timely either because it has a ten-year statute of limitations or because his section 1983 claim is subject to the continuing violation doctrine;

2.  Whether the Sex Offender Directives created and implemented after the commission of Nunn's crimes constitute ex post facto laws as applied to Nunn, violating the state and federal constitutions;

---

[6]Again, the separation of powers claim was not encompassed by the motion or ruling regarding the statute of limitations. The trial court dismissed as time-barred Nunn's claims regarding section 1983; the ex post facto clauses of the United States and Tennessee Constitutions; his due process right to earn a living under the United States and Tennessee Constitutions; the cruel and unusual punishment provisions of the United States and Tennessee Constitutions; the equal protection clause of the United States Constitution; the self-incrimination clauses of the United States and Tennessee Constitutions; void for vagueness pursuant to the United States and Tennessee Constitutions; unlawful bill of attainder under the United States and Tennessee Constitutions; the right to travel under the privileges and immunities clause and due process clause of the United States Constitution; the due process and unconstitutional taking challenge in connection with his family's rights; and the due process violation in connection with mandatory therapy.

[7]A facial challenge involves the constitutionality of the statute as written, while an as applied challenge is evaluated considering how the statute operates in practice against the particular litigant and under the facts of the instant case rather than hypothetical facts. *State v. Crank*, 468 S.W.3d 15, 24 n.5 (Tenn. 2015) (citing *City of Memphis v. Hargett*, 414 S.W.3d 88, 107 (Tenn. 2013)). In response to the motion for summary judgment, Nunn insisted, "Petitioner is NOT making a facial challenge to CSL [community supervision for life] and, indeed, is NOT assailing his CSL sentence. Petitioner is ONLY assailing the conditions of CSL which Petitioner asserts are illegal. This is an 'as applied,' declaratory judgment suit."

3.  Whether the statutes governing community supervision for life impose cruel and unusual punishment as applied to Nunn;

4.  Whether the application of the statutes governing community supervision for life violates the equal protection clause because the Department of Correction is authorized to treat similarly situated persons differently with individualized conditions of supervision;

5.  Whether the legislative delegation of authority to the Department of Correction was unlawful under the separation of powers doctrine of the Tennessee Constitution;

6.  Whether the statutes regarding community supervision for life are unconstitutionally vague;

7.  Whether the statutes imposing community supervision for life violate Nunn's constitutional right to be free from bills of attainder;

8.  Whether the statutes governing community supervision for life violate Nunn's constitutional right to travel;

9.  Whether the conditions of supervision violate Nunn's family's due process rights and constitute a taking of his property without due process;

10. Whether the Sex Offender Directives were promulgated without compliance with the UAPA.

For the following reasons, we reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

### III. STANDARD OF REVIEW

Appellate courts review the grant or denial of a motion for summary judgment de novo with no presumption of correctness. *Bryant v. Bryant*, 522 S.W.3d 392, 398-99 (Tenn. 2017) (citing *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015)). This Court also reviews issues involving constitutional and statutory interpretation de novo, affording no presumption of correctness to the trial court's conclusions. *Crank*, 468 S.W.3d at 21.

9

# IV. DISCUSSION

## A. *Statute of Limitations*

At the outset, Nunn argues that his claims for declaratory relief pursuant to Tennessee Code Annotated section 4-5-225 were timely either because they were subject to Tennessee's general ten-year statute of limitations or because the continuing violation doctrine applies to his section 1983 claim. Nunn asserts that the trial court erroneously characterized the majority of his constitutional claims as federal civil rights claims subject to the one-year statute of limitations.

### 1. Declaratory Judgment Actions & Statutes of Limitation

Generally, "in choosing the applicable statute of limitations, courts must ascertain the gravamen of each claim" asserted. *Benz-Elliott v. Barrett Enters.*, 456 S.W.3d 140, 149 (Tenn. 2015). We "first consider the legal basis of the claim and then consider the type of injuries for which damages are sought." *Id.* at 151.

However, according to the Tennessee Supreme Court,

> Limitations statutes do not apply to declaratory judgments suits, as such, because a declaratory judgment action is a mere procedural device by which various types of substantive claims may be asserted. Accordingly, it is necessary to ascertain the nature of the substantive claims sought to be asserted in a declaratory judgment action in order to determine the appropriate statute of limitations. And, if a special statute of limitations applies to a special statutory proceeding, such as an election contest, it will be applied when a declaratory judgment action is employed to achieve the same result as the special proceeding.

*Dehoff v. Attorney Gen.*, 564 S.W.2d 361, 363 (Tenn. 1978) (citation omitted). For a declaratory judgment action, the appropriate statute of limitations depends on the nature of the substantive claims sought to be asserted. *Taylor v. Reynolds*, No. 93-552-I, 1994 WL 256286, at *1 (Tenn. Ct. App. June 10, 1994). A declaratory judgment action is time-barred if relief on the direct claim would also be barred. *Kielbasa v. B & H Rentals, LLC*, No. M2002-00129-COA-R3-CV, 2003 WL 21297315, at *4 (Tenn. Ct. App. May 22, 2003). "'A contrary rule would allow the plaintiff to make a mockery of the statute of limitations by the simple expediency of creative labeling.'" *Id.* (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 108 F.3d 658, 668 (6th Cir. 1997)).

Here, Nunn originally sought declaratory relief under Tennessee's Declaratory Judgment Act and under 42 U.S.C. § 1983. In his amended complaint, he sought a declaratory judgment under Tennessee Code Annotated section 4-5-225 of the UAPA and under 42 U.S.C. § 1983. At the outset, Nunn suggests that because he is now seeking relief under the UAPA rather than the Declaratory Judgment Act, he is somehow entitled to a different limitations period. We respectfully disagree. Initially, it is important to recognize that a declaratory judgment action filed pursuant to Tennessee Code Annotated section 4-5-225 is fundamentally different than a petition for judicial review of a final order of an administrative agency under section 4-5-322 of the UAPA. *Taylor*, 1994 WL 256286, at *2. The declaratory judgment action is also "distinct from" the administrative proceeding in which the affected person petitioned the agency for a declaratory order. *Nonprofit Hous. Corp. v. Tenn. Hous. Dev. Agency*, No. M2014-01588-COA-R3-CV, 2015 WL 5096181, at *3 n.4 (Tenn. Ct. App. Aug. 27, 2015). A declaratory judgment action filed pursuant to section 4-5-225 is "an original action for a declaratory judgment." *Pickard v. Tenn. Dep't of Env't & Conservation*, No. M2011-01172-COA-R3-CV, 2012 WL 3329618, at *10 (Tenn. Ct. App. Aug. 14, 2012); *Taylor*, 1994 WL 256286, at *2. Thus, we agree with the Defendants' contention that section 4-5-225 "does not transform a declaratory judgment action from a procedural vehicle into a substantive claim with its own statute of limitations."

We reject Nunn's assertion that *Hughley v. State*, 208 S.W.3d 388 (Tenn. 2006), is "virtually on point" and demands application of the general ten-year statute of limitations to *all* declaratory judgment actions filed pursuant to section 4-5-225. We recognize that in *Hughley*, the Tennessee Supreme Court began its opinion by stating, in general terms:

> We granted this appeal to determine the statute of limitations applicable to suits for declaratory judgments filed pursuant to Tennessee Code Annotated section 4-5-225, a provision of the Uniform Administrative Procedures Act, after an agency declines to issue a declaratory order. We hold that, where an agency is petitioned to issue a declaratory order pursuant to Tennessee Code Annotated section 4-5-223 and the agency declines to convene a contested case hearing and issue the declaratory order, the petitioner is not subject to the sixty-day statute of limitations established by Tennessee Code Annotated section 4-5-322(b)(1). Instead, because the legislature has not expressly provided for a statute of limitations, the petitioner's complaint for declaratory judgment under Tennessee Code Annotated section 4-5-225 is governed by Tennessee's general ten-year statute of limitations, codified at Tennessee Code Annotated section 28-3-110(3).

*Id.* at 390. However, in our view, a close reading of *Hughley* reveals that the general ten-

11

year statute of limitations is not automatically applicable to *all* declaratory judgment suits filed pursuant to the UAPA. The facts in *Hughley* involved a prisoner who was seeking a declaratory judgment regarding the calculation of his sentence. *Id.* The trial court held that his petition for declaratory judgment was untimely because it was not filed within sixty days of the agency's refusal to issue a declaratory order. *Id.* The sixty-day time period was found in section 4-5-322 of the UAPA, which governs petitions for judicial review. *Id.* The supreme court took the opportunity to emphasize the differences between declaratory judgment actions filed under section 4-5-225 of the UAPA and petitions for judicial review of an agency's order pursuant to section 4-5-322 of the UAPA. When an agency declines to issue a declaratory order, "the aggrieved petitioner may seek a judicial determination of his concerns by filing a suit for declaratory judgment in the chancery court of Davidson County," and the UAPA "does not set forth a time period within which the complainant must file his suit for declaratory judgment." *Id.* at 391. The court added,

> The legislature may have intended to provide a specific limitations period for declaratory judgment actions following an agency's decision not to convene a contested case hearing and issue a requested declaratory order. It did not, however, do so. By the plain language of the applicable statute, such a limitations period does not exist. Accordingly, we urge the legislature to address this issue.

*Id.* at 394. Lastly, the court was required to determine "what limitations period applies to Hughley's suit." *Id.* at 395. The court explained:

> Neither section 4-5-225 nor any other provision of the Act expressly provides a limitations period for a suit for declaratory judgment following an agency's summary refusal of a petition for declaratory order. Our Court of Appeals has recognized that "when a petition for declaratory judgment seeks the same relief that is otherwise available in another statutory proceeding, then the filing of the declaratory judgment is governed by the statute of limitations governing that statutory proceeding." *Newsome v. White*, No. M2001-03014-COA-R3-CV, 2003 WL 22994288, at *4 (Tenn. Ct. App. Dec.22, 2003) (citing *Dehoff v. Attorney General*, 564 S.W.2d 361, 363 (Tenn. 1978)). <u>In this case, however, Hughley is not seeking the same relief that is otherwise available in another statutory proceeding.</u> As noted by our Court of Criminal Appeals, "[t]he validity of any sentence reduction credits *must* be addressed through the avenues of the Uniform Administrative Procedures Act." *Carroll v. Raney*, 868 S.W.2d 721, 723 (Tenn. Crim. App. 1993) (emphasis added). Accordingly, Hughley's complaint is covered by Tennessee's general ten-year statute of limitations.

See Tenn. Code Ann. § 28-3-110 (2000) ("The following actions shall be commenced within ten (10) years after the cause of action accrued: ... (3) All other cases not expressly provided for.").

*Id.* (emphasis by underlining added, italics in original). The supreme court broadly stated its conclusion as follows:

Where an agency declines to convene a contested case hearing in response to a petition for declaratory order made pursuant to Tennessee Code Annotated section 4-5-223 and issues only a letter of denial, a petitioner has ten years in which to file a suit for declaratory judgment pursuant to Tennessee Code Annotated section 4-5-225.

*Id.* However, we believe that the supreme court did not mean to foreclose the possibility that another statute of limitations might apply "'when a petition for declaratory judgment seeks the same relief that is otherwise available in another statutory proceeding,'" and in that case, "'the filing of the declaratory judgment is governed by the statute of limitations governing that statutory proceeding.'" *Id.* (quoting *Newsome*, 2003 WL 22994288, at *4).[8] Indeed, contrary to Nunn's position on appeal, this Court has cited *Hughley* for the notion that "[t]here is no universal statute of limitations applicable to all actions for

---

[8]In *Newsome*, a prisoner requested a declaratory order from the Department of Correction, which was denied, then he filed a petition for declaratory judgment pursuant to section 4-5-225 of the UAPA. *Newsome*, 2003 WL 22994288, at *1. The Court of Appeals explained that his declaratory judgment action was time-barred to the extent that it sought the same relief that would have been available if the prisoner had timely filed a petition for common law writ of certiorari seeking review of the prison disciplinary proceeding he sought to challenge. *Id.* at *4. The Court explained,

Petitions for declaratory judgment under both Tenn. Code Ann. § 4-5-225 and Tenn. Code Ann. § 29-14-103 (2000) are not governed by specific statutes of limitations. However, when a petition for declaratory judgment seeks the same relief that is otherwise available in another statutory proceeding, then the filing of the declaratory judgment is governed by the statute of limitations governing that statutory proceeding. *Dehoff v. Attorney General*, 564 S.W.2d 361, 363 (Tenn. 1978) (a declaratory judgment challenging a special referendum is governed by the statute of limitations applicable to election contests); *Kielbasa v. B & H Rentals, LLC*, No. M2002-00129-COA-R3-CV, 2003 WL 21297315, at *3-5 (Tenn. Ct. App. May 22, 2003) (No Tenn. R. App. P. 11 application filed) (declaratory judgment challenging a decision of a board of zoning appeals is governed by the statute of limitations for petitions for common-law writs of certiorari).

*Id.* Noting the similarity between the relief Mr. Newsome sought in his petition for declaratory judgment and the relief that would have been available to him through a common law writ of certiorari, the court determined that the time requirement for filing a petition for writ of certiorari also applied to his petition for declaratory judgment filed pursuant to the UAPA. *Id.*

declaratory judgment." *Witty v. Cantrell*, No. E2010-02303-COA-R3-CV, 2011 WL 2570754, at *9 (Tenn. Ct. App. June 29, 2011); *see also Allen v. City of Memphis*, 397 S.W.3d 572, 582 (Tenn. Ct. App. 2012).

Again, because declaratory judgment actions do not have a specific statute of limitations applicable to them "as such," we must "ascertain the nature of the substantive claims sought to be asserted" in the action in order to determine the applicable statute of limitations. *Dehoff*, 564 S.W.2d at 363. And, according to *Hughley*, we must consider whether Nunn's petition for declaratory judgment "'seeks the same relief that is otherwise available in another statutory proceeding.'" *Hughley*, 208 S.W.3d at 395 (quoting *Newsome*, 2003 WL 22994288, at *4).

## 2. The Declaratory Claims asserted by Nunn

### a. Section 1983 Claim

42 U.S.C. section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to *the deprivation of any rights, privileges, or immunities secured by the Constitution and laws*, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

(Emphasis added.) "Section 1983 creates a private cause of action for citizens whose federal constitutional rights have been violated by persons acting under color of state law." *Payne v. Breuer*, 891 S.W.2d 200, 202 (Tenn. 1994).

Nunn's amended complaint alleged that section 1983 "prohibits the State of Tennessee from depriving [Nunn] of the 'rights, privileges, and immunities secured by the constitution[ and] laws' in the United States." The amended complaint alleged that the federal constitutional violations Nunn alleged in his previous counts for declaratory relief under state law also "constitute violations of 42 U.S.C. § 1983" due to "the deprivation of civil rights under color of state law."

We conclude that this section 1983 claim was subject to a one-year statute of limitations. Tennessee Code Annotated section 28-3-104(a)(1)(B) provides a one-year statute of limitations for "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes." Although this statute of limitations does

not specifically mention section 1983 actions seeking *declaratory* relief, it should also encompass such actions, under the teaching of *Dehoff* and similar cases, because it would govern the underlying direct claim sought to be asserted in the declaratory judgment action. In other words, Nunn's declaratory claim pursuant to section 1983 should be governed by the same statute of limitations that would govern a direct claim for damages under section 1983. *See Kielbasa*, 2003 WL 21297315, at *4. In *Kielbasa*, this Court quoted a Maryland court's analysis containing the following explanation: "'if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred.'" *Id.* at *4 (quoting *Commercial Union v. Porter Hayden*, 698 A.2d 1167, 1192-93 (Md. Ct. App. 1997)). Stated differently, "'the right to declaratory relief continues until the right to coercive relief, as between the parties has itself been extinguished. . . . [T]he statutory period should expire on the coercive and the declaratory causes of action simultaneously.'" *Id.* at *3 (quoting *Commercial Union*, 698 A.2d at 1192-93).[9] We find this reasoning persuasive and conclude that Nunn's claim for declaratory relief under section 1983 is subject to the one year statute of limitations that would govern a claim for damages under the statute.[10] *See Foster v. State*, 150 S.W.3d 166, 167 (Tenn. Ct. App. 2004) (applying the one year statute of limitations to a "motion for declaratory judgment" that was essentially a civil rights action based on 42 U.S.C. § 1983).

Alternatively, Nunn argues that his section 1983 claim is not time-barred even under the one year statute of limitations because "it falls under the continuing harm exception." He claims that "the violations underlying his federal civil rights claim are continuing and growing worse." Although Nunn does not identify any specific date on which the statute of limitations should begin to run under this theory, he claims that the

---

[9]The Maryland Court originally quoted these two passages, respectively, from *Maguire v. Hibernia Savings & Loan Soc.*, 23 Cal. 2d 719, 146 P.2d 673, 681 (Cal. 1944) and a Comment entitled, *Developments in the Law: Declaratory Judgments*, 62 Harv. L. Rev. 787 (1949).

[10]Federal courts have reached a similar conclusion. *See, e.g.*, *Cox v. Shelby State Cmty. Coll.*, 48 F. App'x 500, 507 (6th Cir. 2002) (noting that Tennessee's statute of limitations for federal civil rights claims does not expressly limit "claims for prospective non-monetary relief" but nonetheless concluding that a claim for injunctive relief is subject to the one-year statute of limitations). Because Congress failed to provide a specific statute of limitations for section 1983 actions, federal courts have looked to the state statute of limitations "most analogous" to the particular 1983 action. *Owens v. Okure*, 488 U.S. 235, 239 (1989). To eliminate confusion and conflicting decisions, the United States Supreme Court has declared that section 1983 claims are best characterized as personal injury actions, and "a State's personal injury statute of limitations should be applied to all § 1983 claims." *Id.* Tennessee has a one-year statute of limitations specific to "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes," Tenn. Code Ann. § 28-3-104(a)(1)(B), and a one-year statute of limitations for "injuries to the person." Tenn. Code Ann. § 28-3-104(a)(1)(A). Again, Nunn seeks declaratory relief and not damages. Either way, even if we apply Tennessee's one-year personal injury statute of limitations instead of the one-year statute for federal civil rights actions, the outcome is the same.

"continuing violation is exemplified" by the fact that the Department of Correction increased the number of his Halloween curfew days in 2014.[11]  Nunn claims that he is required to "endure" the conditions of supervision every day of his life and asserts that the "very application of these conditions is, in itself, the embodiment of a continuing violation of his constitutional rights."

"The continuing violation doctrine is a federal common law doctrine[.]"  *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017).  "The continuing violation doctrine was developed by federal courts interpreting federal anti-discrimination statutes, particularly Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII")."  *Booker v. The Boeing Co.*, 188 S.W.3d 639, 643 (Tenn. 2006).  At the outset, we note that federal courts have not been consistent as to whether the continuing violation doctrine is an accrual rule or a tolling doctrine.[12]  The

---

[11]In this section of Nunn's brief, he contends that "supervision is now more rigid" than in years past and suggests that the Sex Offender Directives are now applied in a more restrictive manner, but he does not point to any *new conditions* that have been imposed on him that differ from those generally authorized when he signed the Sex Offender Directives in 2009.  For instance, Nunn complains about the increases in Halloween curfew days over the years, but the Sex Offender Directives he signed in 2009 expressly provided for curfews, and the Halloween restrictions had been in place since about 2006.  Nunn signed a document agreeing to abide by the Halloween restrictions and curfew on September 16, 2009, more than one year before he filed his complaint on September 29, 2010.

[12]The Seventh Circuit noted this disagreement in *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001):

> Some cases say that the doctrine of continuing violation is a tolling doctrine, *Davis v. United States Dept. of Justice*, 204 F.3d 723, 726 (7th Cir. 2000) (per curiam); *Herman v. National Broadcasting Co.*, 744 F.2d 604, 607 (7th Cir. 1984); *Matson v. Burlington Northern Santa Fe R.R.*, 240 F.3d 1233, 1236-37 (10th Cir. 2001); *Fletcher v. Union Pacific R.R.*, 621 F.2d 902, 908 (8th Cir. 1980), and if this is right it would, because this is a section 1983 suit, bring Illinois law [and its doctrine of continuing violation] into play. . . . But the usual and it seems to us the correct characterization of the doctrine of continuing violation is that it is a doctrine governing accrual, *e.g., Wilson v. Giesen*, [] 956 F.2d [738, 743 (7th Cir. 1992)]; *Taylor v. Meirick*, [] 712 F.2d [1112, 1118-19, (7th Cir. 1983)]; *Newell Recycling Co. v. EPA*, 231 F.3d 204, 206-07 (5th Cir. 2000); *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996) (per curiam); *Page v. United States*, 729 F.2d 818, 821 (D.C. Cir.1984), not a tolling doctrine . . . .

*Id.*; *see also Katz v. Vill. of Beverly Hills*, 677 F. App'x 232, 236 (6th Cir. 2017) ("the running of the limitations period can be tolled under the 'continuing violation' doctrine"); *Printup v. Dir., Ohio Dep't of Job & Family Servs.*, 654 F. App'x 781, 790 n.8 (6th Cir. 2016) (explaining that "continuing violations . . . . toll the applicable statute of limitations" but ultimately concluding that "the continuing violation doctrine did not delay the accrual of Printup's causes of action"); *Guba v. Huron Cty.*, 600 F. App'x 374, 379 (6th Cir. 2015) (referencing "the continuing violation doctrine -- a common-law limited exception to the accrual of a cause of action"); *Cox*, 48 F. App'x at 507 (considering the federal continuing violation doctrine in a section 1983 case after noting that federal law governs when the cause of action accrues, but stating, "We toll a statute of limitations if there is a continuing violation[.]")

distinction is particularly important in a section 1983 case, where the accrual date of the cause of action is a question of federal law, but state law generally provides the length of the statute of limitations and the applicable tolling rules. *Wallace v. Kato*, 549 U.S. 384, 388, 394 (2007). In other words, the federally-recognized continuing violation doctrine cited by Nunn on appeal only applies in this case if it is an accrual rule. (Nunn cites no Tennessee law regarding tolling.) We further note that the federal continuing violation doctrine is not universally applied by federal courts in section 1983 cases. *See, e.g.*, *Gosselin v. Kaufman*, 656 F. App'x 916, 919 (10th Cir. 2016) ("we have never formally adopted the continuing violation doctrine for § 1983 actions"). The Sixth Circuit "employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions." *Agrawal v. Montemagno*, 574 F. App'x 570, 575 (6th Cir. 2014). We do not find it necessary to reconcile these conflicting federal decisions in the case before us because we conclude that the continuing violation doctrine would not save Nunn's claims even if it were to be applied in this context.

The Sixth Circuit applies the following test for a continuing violation in the context of a section 1983 action: "[a] 'continuous violation' exists if: (1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiff[] accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (quoting *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009)). When the plaintiff alleges a continuing violation in an attempt to toll the running of the statute of limitations, the court will "look to what event 'should have alerted the average lay person to protect his rights.'" *Cox*, 48 F. App'x at 507 (quoting *Dixon v. Anderson*, 928 F.2d 212, 218 (6th Cir. 1991)). In *Broom*, the Sixth Circuit rejected a death-sentenced prisoner's argument that the continuing violation doctrine tolled the statute of limitations for his section 1983 action challenging Ohio's method of execution. *Broom*, 579 F.3d at 555. The prisoner argued that the violation "continues anew every single day" that the protocol remains in place. *Id.* The court explained, "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (citing *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)). The court reasoned that the prisoner was challenging "the effects from the adoption of the lethal-injection protocol" and "the continued risk of future harm." *Id.* at 555-56. "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (internal quotation omitted).

The Sixth Circuit's opinion in *Printup v. Director, Ohio Department of Job and Family Services*, 654 F. App'x 781 (6th Cir. 2016), is also instructive. There, a teacher brought a section 1983 action against a county, alleging that it failed to properly train

social workers who placed her on Ohio's Central Registry on Child Abuse and Neglect as an "indicated" child abuse perpetrator, which caused her to lose her job. *Id.* at 783. The district court concluded that her claims were time-barred because the statute of limitations began to run when she was deemed a child abuser and lost her employment. *Id.* at 784. On appeal, the Sixth Circuit rejected her argument based on the continuing violation doctrine, explaining that the teacher's "continued appearance on the Central Registry and lack of employment at [the school] were continual ill effects of her initial designation as a child abuser; they were not occasioned by continual unlawful acts." *Id.* at 789-90.

Other courts have found the continuing violation doctrine inapplicable to sex offenders asserting section 1983 claims comparable to those in this case. In *Cibula v. Fox*, 570 F. App'x 129, 131 (3rd Cir. 2014), a prisoner brought a section 1983 action against employees of the Pennsylvania Department of Corrections, alleging that they violated his due process rights by classifying him as a sex offender without a hearing and violated the Eighth Amendment prohibition against cruel and unusual punishment by subjecting him to abuse and harassment based on this improperly imposed sex offender status. Specifically, the prisoner alleged that the corrections officers disclosed his sex offender status to guards and inmates, which resulted in other inmates abusing and harassing him. *Id.* at 132. The complaint was dismissed because it was not filed within the statute of limitations for section 1983 claims. *Id.* at 133. The Third Circuit affirmed, concluding that the prisoner's claim accrued when he was summarily labeled as a sex offender. *Id.* at 134. The court rejected the prisoner's claim that the continuing violation doctrine applied, explaining that "the abuse and harassment Cibula allegedly suffered as a result of these disclosures is best viewed as merely the consequences of the original act of deeming him a sex offender[.]" *Id.* at 136 (internal quotation omitted). In other words, the court explained, these were continual ill effects of the original violation and not continual unlawful acts. *Id.*

Other courts have reached similar conclusions. *See, e.g.*, *Meggison v. Bailey*, 575 F. App'x 865, 867 (11th Cir. 2014) ("Here, the act Meggison contends violated his due-process rights was his classification as a sex offender subject to Florida's registration requirements. This classification will continue to have effects on Meggison into the future, but a new act has not occurred every time Meggison feels one of those continuing effects."); *Easterling v. Thurmer*, No. 14-CV-1392, 2015 WL 9463156, at *2 (E.D. Wis. Dec. 28, 2015) (rejecting the plaintiff's argument that his continued ineligibility to visit his daughter until he completed sex offender treatment resulted in the statute of limitations commencing anew each day for purposes of his 1983 claim, as it was the natural consequence of the original decision regarding his treatment requirement); *Rothe v. Sloan*, No. 14-CV-03175-CMA-KMT, 2015 WL 3457894, at *2 (D. Colo. May 29, 2015) (concluding that the plaintiff's injury accrued when he was required to register as a

18

sex offender, as he was aware then of the adverse consequences of registration, and "although [the plaintiff] contends that the latest sex offender registry regime is substantively more punitive than prior statutes, this is not an adequate basis for tolling"); *Matthews v. Rice*, 2013 WL 5276128, at \*2 (D. Kan. Sept. 28, 2013) ("plaintiff knew or should have known of the alleged constitutional violations giving rise to his claims at the time when he was first classified as a sex offender"); *Pollard v. Clemants*, No. 11-CV-1810-RBJ-KMT, 2012 WL 2974676, at \*3 (D. Colo. July 20, 2012) (rejecting a prisoner's argument that the continuing violation doctrine applied because his classification as a sex offender caused him "on an ongoing daily basis to lose earned time credits," as these were only continuing effects of the original classification as a sex offender); *Munsch v. Evans*, No. 11-CV-2271 JFB ETB, 2012 WL 528135, at \*14 (E.D.N.Y. Feb. 17, 2012) (finding a sex offender's section 1983 claim regarding the conditions of his community supervision for life was time-barred, as "the decision to impose conditions to plaintiff's lifetime supervision was a one time act with continued consequences," and therefore the continuing violation doctrine did not apply) (quotation omitted); *Moore v. Lappin*, No. 3:08CV344/MCR/EMT, 2009 WL 3336082, at \*3 (N.D. Fla. Oct. 15, 2009) (finding the continuing violation doctrine did not apply to the plaintiff's due process claim in connection with being placed on the sex offender registry because he "complain[ed] of the present consequence of a one time violation, which does not extend the limitations period"); *compare Washington v. Texas Dep't of Criminal Justice*, 653 F. App'x 370, 372 (5th Cir. 2016) (rejecting a sex offender's argument that "his continuation on the sex offender caseload caused him continuing harm" within the meaning of a Texas exception to the statute of limitations for his section 1983 claim, as he alleged "continuing *injury* . . . not wrongful continuing *conduct*").[13]

Here, we also find that the continuing violation doctrine, if applied in this context, would not save Nunn's section 1983 claim. He seeks to challenge his placement under community supervision pursuant to the Sex Offender Directives upon his release from prison in 2009 (over his objection) and the present consequences or "continual ill effects" of that placement. Nunn's placement under supervision pursuant to the Sex Offender Directives in 2009 was "an event that would alert a potential civil rights plaintiff to

---

[13]Although the Tenth Circuit has not formally adopted the continuing violation doctrine in section 1983 cases, in *Romero v. Lander*, 461 F. App'x 661, 666-67 (10th Cir. 2012), the court held that a prisoner's section 1983 claim accrued when he was initially classified as a sex offender, and the fact that he endured adverse consequences for years thereafter did not extend the statute of limitations. The court noted that the statute begins to run on a section 1983 claim when the injury occurs, not when the consequence of that injury manifests itself. *Id.* at 667. In *Romero*, the restrictions for sex offenders were reimposed on the prisoner during subsequent incarcerations and were more harsh than those originally imposed. Still, the court explained, "even if we accepted Mr. Romero's assertion that he lacked knowledge of the future impact of his classification, . . . '[a] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run.'" *Id.* at 669 (quoting *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)).

protect his rights." *See Cox*, 48 Fed. App'x at 507. We reject Nunn's suggestion that the statute of limitations would commence anew each day that he is subject to those conditions of supervision or each time one of the conditions set forth in the Sex Offender Directives is applied to him.

In sum, we conclude that the one year statute of limitations for civil actions brought under the federal civil rights statutes applies to Nunn's section 1983 claim, and he is not entitled to relief under the continuing violation doctrine. The accrual date for a section 1983 cause of action is a question of federal law. *Wallace*, 549 U.S. at 388. "Ordinarily, the limitation period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007). The trial court found that Nunn knew he was subject to the 1999 Sex Offender Directives when he was released from prison on March 28, 2009, and placed under such supervision pursuant to those Sex Offenders Directives over his objection. Using this "latest possible" date, the trial court found that Nunn's civil rights claims filed in September 2010 were time-barred.[14] Nunn's brief on appeal likewise states, "The date from which the statute of limitation must be marked is March 28, 2009." He measures the statute of limitations "from the date the correctional officer presented him with the conditions he was to endure for the remainder of his life." Aside from Nunn's argument regarding the continuing violation doctrine, which we have already rejected, the parties present no issue on appeal challenging the trial court's conclusion that the statute of limitations began to run on March 28, 2009, when the institutional parole officer placed Nunn under supervision pursuant to the Sex Offender Directives over his objection. As such, we will not review the trial court's conclusion as to that issue. *See, e.g.*, *Jackson v. City of Cleveland*, No. E2015-01279-COA-R3-CV, 2016 WL 4443535, at *8 n.6 (Tenn. Ct. App. Aug. 22, 2016), *perm. app. denied* (Tenn. Dec. 15, 2016) (considering the appellant's argument regarding the continuing violation doctrine but noting that he raised no argument about the discovery rule and therefore waived any consideration of that issue).[15] The trial court properly

---

[14]The trial court and the parties proceeded as if the substitution of the Department of Correction in the 2014 amended complaint (pursuant to the agreed order) would relate back to the filing of the original complaint against the Board of Probation and Parole in 2010. No issue is raised on appeal regarding this subject. In fact, the Defendants' brief "presumes the amended complaint relates back to the filing date of the original complaint." As a result, we have not analyzed the issue on appeal.

[15]Nunn has argued throughout this proceeding that "[t]he date from which the statute of limitation must be marked is March 28, 2009." He included this statement in his response to the motion for summary judgment before the trial court and repeats it in his brief on appeal. He reasoned that "because we are dealing with a 10-year statute of limitation for declaratory judgments involving the Department of Correction, [his] suit filed September 29, 2010 was timely since it was less than two years since he had been released from prison when the directives were applied to him." Nunn has continued to measure the limitations period "from the date the correctional officer presented him with the conditions he was to endure for the remainder of his life" on March 28, 2009. The trial court found that the statute of

found Nunn's section 1983 claim time-barred pursuant to the one year statute of limitations and properly granted summary judgment to the Defendants on this claim.

### b.    Alleged Violations of the Federal Constitution

Next, we must determine the statute of limitations applicable to Nunn's various "counts" for declaratory relief under Tennessee law asserting violations of the United States Constitution. Nunn's amended complaint alleged the following claims for declaratory relief based on violations of the United States Constitution, which the Defendants claimed were time-barred:

- Ex post facto violations;
- Violation of his due process right to earn a living;
- Cruel and unusual punishment;

---

limitations commenced on March 28, 2009. In the statement of issues listed in Nunn's brief on appeal, he raised one lengthy issue regarding the statute of limitations:

> Since Petitioner's case is one for declaratory relief under Tenn. Code Ann. § 4-5-225 which authorizes relief if the agency rule "violates constitutional provisions, exceeds the statutory authority of the agency, was adopted without compliance with the rulemaking procedures provided for in this chapter or otherwise violates state or federal law," which carries a 10-year period of limitation, whether the chancellor erroneously characterized the suit as exclusively a federal civil rights complaint, dismissing it because of the 1-year federal civil rights limitations period; in any event the continuing and escalating harm constitutes an exception to the federal civil rights limitation.

Although not a model of clarity, this issue fairly encompasses two issues: (1) whether the trial court erred in applying the one year statute of limitations for federal civil rights claims rather than the general ten year statute of limitations; and (2) whether the continuing harm exception should apply to his section 1983 claim. After repeatedly arguing throughout his brief that the statute of limitations commenced on March 28, 2009, and presenting the aforementioned issue, Nunn appeared to change course. His brief stated, "The issues here assume the operative date for the communicant of the statute of limitations is March 28, 2009 when Petitioner was placed on CSL [community supervision for life] under the jurisdiction of the TBOPP." Nunn then briefly suggested that the statute of limitations may have "commenced anew" either when the Department of Correction assumed jurisdiction over community supervision for life in 2012 or when it implemented regulations in 2014. However, Nunn cited no authority for this argument and did not cite to any location in the record where he pursued this argument before the trial court. We decline to consider this late-raised alternative argument because it was not listed as an issue presented for review in Nunn's brief. "'Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals.'" *Bunch v. Bunch*, 281 S.W.3d 406, 410 (Tenn. Ct. App. 2008) (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)). Our supreme court has clearly stated that "an issue may be deemed waived when it is argued in the brief but is not designated as an issue in accordance with Tenn. R. App. P. 27(a)(4)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).

- Violation of equal protection;
- Violation of the self-incrimination clause;
- Unlawful bill of attainder;
- Violation of his right to travel under the privileges and immunities clause and due process clause;
- Violation of due process rights and an unconstitutional taking due to the impact on his family;
- Violation of due process in connection with the mandatory therapy requirement;
- Violation of due process due to vagueness.[16]

The trial court correctly noted that Nunn "seeks declaratory relief based on the same violations of his federal constitutional rights that support his § 1983 claims[.]" This conclusion is supported by the record and not disputed by Nunn. In fact, in response to the motion for summary judgment, Nunn acknowledged that he was seeking "declaratory relief under state declaratory judgment statutes and pendant claims under federal statutes permitting identical declaratory relief." Still, he insisted that his section 1983 claim was irrelevant to his "state law declaratory relief claim, albeit citing federal constitutional violations." Nunn claimed that his reliance on federal constitutional claims as the basis for seeking declaratory relief did not transform his claims into "federal civil rights" claims because he was seeking declaratory relief pursuant to section 4-5-225 of the UAPA. Nunn insists that "parties may assert alternative claims and defenses and request alternative relief in a single complaint." *Benz-Elliott v. Barrett Enters.*, 456 S.W.3d 140, 148 (Tenn. 2015). When that happens, courts must ascertain the gravamen of each claim in order to choose the applicable statute of limitations. *Id.* at 149.

Clearly, Nunn has pursued two different avenues for seeking declaratory relief

---

[16]We will include the count alleging vagueness in our discussion of the statute of limitations. The section of the trial court's order granting summary judgment based on the statute of limitations referenced the dismissed counts by count number and included the count number corresponding to Nunn's allegation of unconstitutional vagueness. In addition, though, the trial court went on to substantively analyze the vagueness issue based on the court's finding that the vagueness issue was a facial challenge to the statutes governing community supervision for life. Nunn has insisted throughout this proceeding that he is not asserting a facial challenge. When interpreting a trial court's order, "we ascertain the intent of the court, and, if possible, make the order in harmony with the entire record in the case and to be such as 'ought to have been rendered.'" *Byrnes v. Byrnes*, 390 S.W.3d 269, 277 (Tenn. Ct. App. 2012) (quoting *Lamar Adver. Co. v. By-Pass Partners*, 313 S.W.3d 779, 786 (Tenn. Ct. App. 2009)). The determinative factor is the intention of the court as collected from all parts of the judgment. *Corrozzo v. Corrozzo*, No. M2012-01317-COA-R3-CV, 2013 WL 4107625, at *7 (Tenn. Ct. App. Aug. 13, 2013). We will treat the trial court's order as granting summary judgment on the vagueness count based on the statute of limitations to the extent that it was an as-applied challenge but substantively analyzing the issue to the extent that Nunn raised a facial challenge.

regarding the same alleged violations of the United States Constitution. He sought declaratory relief pursuant to 42 U.S.C. § 1983, and he sought declaratory relief pursuant to Tennessee Code Annotated section 4-5-225 of the UAPA. Examining the nature and scope of 42 U.S.C § 1983 is helpful. Section 1983 "has become the principal civil remedy for the enforcement of federal constitutional and statutory rights." *King v. Betts*, 354 S.W.3d 691, 702 (Tenn. 2011). However, "[s]ection 1983 does not create or confer substantive rights." *Id.* (citing *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) ("[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything.")). Instead, section 1983 "provides a remedy for violations of rights protected by the United States Constitution or by a federal statute other than Section 1983 itself." *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A plaintiff who files suit pursuant to section 1983 "'must point to another source, either the United States Constitution or federal statutes, *for the substantive rights they seek to enforce.*'" *Id.* (quoting 1 Bodensteiner & Levinson § 1:1, at 1-5) (emphasis added).

Section 1983 "provides 'a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution.'" *Wilson v. Garcia*, 471 U.S. 261, 271-72 (1985) (quoting *Mitchum v. Foster*, 407 U.S. 225, 239 (1972)). "[I]t is 'the purest coincidence,' when state statutes or the common law provide for equivalent remedies." *Id.* at 272 (quoting *Monroe v. Pape*, 365 U.S. 167, 196 n.5 (1961) (Harlan, J., concurring)). However, the section 1983 remedy "is, in all events, 'supplementary to any remedy any State might have.'" *Id.* (quoting *McNeese v. Bd. of Educ.*, 373 U.S. 668, 672 (1963)). "Section 1983 does not displace, but rather supplements, the remedies that may be available under state law." *King*, 354 S.W.3d at 702 n.15.

Pursuant to the Tennessee's version of the UAPA, a chancery court considering a petition for declaratory judgment is authorized to declare the challenged rule or order invalid if it "violates constitutional provisions." Tenn. Code Ann. § 4-5-225(c). The question, then, is whether the UAPA declaratory judgment action asserting constitutional violations should be governed by the statute of limitations applicable to a section 1983 claim. We conclude that it should not.

Returning to the rules set forth in *Dehoff*, the UAPA declaratory judgment action "is a mere procedural device by which various types of substantive claims may be asserted," and we must "ascertain the nature of the substantive claims sought to be asserted in a declaratory judgment action in order to determine the appropriate statute of limitations." *Dehoff*, 564 S.W.2d at 363. Here, the substantive claims sought to be asserted in the section 1983 action and the UAPA action are identical – violations of

federal constitutional rights. But the substantive claim is not the section 1983 claim itself. Although Tennessee Code Annotated section 28-3-104(a)(1)(B) provides a one year statute of limitations for "[c]ivil actions . . . brought under the federal civil rights statutes," it does not state that it applies to all civil actions brought for violations of federal constitutional rights. Thus, examining the substantive rights asserted in this UAPA declaratory judgment action does not lead us to an otherwise applicable statute of limitations.

*Dehoff* also provides that "if a special statute of limitations applies to a special statutory proceeding, such as an election contest, it will be applied when a declaratory judgment action is employed to achieve the same result as the special proceeding." *Dehoff*, 564 S.W.2d at 363. As the court recognized in *Hughley*, "'when a petition for declaratory judgment seeks the same relief that is otherwise available in another statutory proceeding, then the filing of the declaratory judgment is governed by the statute of limitations governing that statutory proceeding.'" *Hughley*, 208 S.W.3d at 395 (quoting *Newsome*, 2003 WL 22994288, at *4). In *Dehoff*, the claims for declaratory relief asserted by the plaintiffs "amount[ed] to an election contest," and because the petition was not filed within the ten-day limitation period for such contests, it was time-barred. *Dehoff*, 564 S.W.2d at 364. In *Newsome*, this reasoning was applied to a UAPA petition for declaratory judgment that sought the same relief that would have been available through a timely filed petition for writ of certiorari, which was "[t]he only procedural vehicle for obtaining direct judicial review of a prison disciplinary proceeding." *Newsome*, 2003 WL 22994288, at *4.[17] And, in *Johnson v. Metropolitan Government for Nashville Davidson County, Tennessee*, 54 S.W.3d 772, 774 (Tenn. Ct. App. 2001), the court similarly treated a petition for declaratory judgment as an untimely petition for a writ of certiorari because that was "the only mechanism by which a court may review such administrative decisions." The same reasoning has also been applied to declaratory judgment actions seeking the same relief that would have been available in a quo warranto proceeding to challenge annexation. *See Allen v. City of Memphis*, 397 S.W.3d 572, 582 (Tenn. Ct. App. 2012) (finding a petition for declaratory judgment filed well beyond the quo warranto limitation period was time-barred). "With rare exception, the appropriate avenue by which to contest an annexation . . . is the filing of a timely action in quo warranto." *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 712

---

[17]Citing language from *Dehoff*, several other cases have also applied the requirements for filing a petition for writ of certiorari to a declaratory judgment action seeking the same relief. *See State ex rel. Moore & Assocs. v. West*, 246 S.W.3d 569, 581 (Tenn. Ct. App. 2005) ("Where the relief sought in a declaratory judgment action is the same relief that is available under common law writ of certiorari, the action will be treated as a certiorari action, and the requirements of such an action will be applied."); *Campbell v. Bedford Cty. Reg'l Planning Comm'n*, No. M2003-00025-COA-R3-CV, 2004 WL 626724, at *1 (Tenn. Ct. App. Mar. 29, 2004) (dismissing the declaratory judgment action as untimely); *Kielbasa*, 2003 WL 21297315, at *3 (same).

24

(Tenn. 2009). In each of these cases – election contests, quo warranto proceedings, and certiorari proceedings -- the "special statutory proceeding" that would have been available for the plaintiff to seek the same relief was in the nature of a mandatory procedural mechanism or proceeding. Accordingly, the plaintiff was not permitted to bypass that procedure by simply filing a petition for declaratory judgment.

The situation before us is different. Although Nunn's UAPA declaratory judgment action seeks the same relief that is otherwise available through another *statutory remedy*, section 1983 is not a mandated *statutory proceeding* like an election contest, quo warranto action, or petition for writ of certiorari. This distinction has been noted under the federal rules. *See Katzenbach v. McClung*, 379 U.S. 294, 296 (1964) ("even though Rule 57 of the Federal Rules of Civil Procedure permits declaratory relief although another adequate *remedy* exists, it should not be granted where a *special statutory proceeding* has been provided") (emphasis added).[18]

In *Highwoods Properties, Inc.*, 297 S.W.3d at 709, the Tennessee Supreme Court stated, "Subject to some exceptions, a declaratory judgment action should not be considered where special statutory proceedings provide an adequate remedy." The court said that the plaintiffs in that case -- "having allowed their special statutory [quo warranto] cause of action to expire -- are not entitled to a second bite of the apple under the Declaratory Judgment Act." *Id*. However, we conclude that the same reasoning does not extend to Nunn's situation. A section 1983 claim is "supplementary to whatever relief is afforded by state common-law or statutory remedies." *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 184 (6th Cir. 1990). "Although principles of collateral estoppel and res judicata may effectively keep civil rights plaintiffs from getting two bites at the apple, they, at least initially, often have two apples to bite." *Id.*

Considering these principles, we conclude that Nunn's UAPA declaratory judgment claim asserting violations of the United States Constitution is not subject to the one-year statute of limitations that governs his section 1983 claim. Even though Nunn is attempting to utilize the UAPA declaratory judgment action to achieve the same result as his section 1983 claim, his section 1983 claim is not the type of "special statutory proceeding" discussed in *Dehoff* that requires us to apply its statute of limitations.

As it is, we are left to determine what statute of limitations applies to Nunn's

---

[18]The advisory commission comment to Federal Rule of Civil Procedure 57, regarding declaratory judgments, further notes the distinction: "A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case, but general ordinary or extraordinary legal remedies, whether regulated by statute or not, are not deemed special statutory proceedings." According to the comment, "the fact that another remedy would be equally effective affords no ground for declining declaratory relief." Fed. R. Civ. P. 57 cmt.

UAPA declaratory judgment action asserting violations of the United States Constitution. The procedural mechanism of a declaratory judgment action is not subject to a statute of limitations "as such," *Dehoff*, 564 S.W.2d at 363, and we discern no statute of limitations that would specifically apply to asserted violations of substantive constitutional rights. "Where no specific statute of limitations can be identified, the general ten-year statute of limitations applies." *Witty*, 2011 WL 2570754, at \*9. Tennessee Code Annotated section 28-3-110(a)(3) provides that "[t]he following actions shall be commenced within ten (10) years after the cause of action accrued: . . . [a]ll other cases not expressly provided for." Finding no statute of limitations applicable to Nunn's UAPA declaratory claims alleging violations of the United States Constitution, we conclude that such claims are subject to the general ten-year statute of limitations. *See Hughley*, 208 S.W.3d at 395 (applying the ten-year statute of limitations to a prisoner's UAPA declaratory judgment action where he was not seeking the same relief otherwise available in another statutory proceeding).

### c.    Alleged Violations of the Tennessee Constitution

Finally, we consider the counts in Nunn's complaint seeking declaratory relief under the UAPA for alleged violations of the Tennessee Constitution. Again, when considering a request for a declaratory judgment pursuant to the UAPA, the chancery court is authorized to determine whether the challenged rule or order "violates constitutional provisions." Tenn. Code Ann. § 4-5-225(c). Nunn's complaint sought declaratory relief for the following claims under the Tennessee Constitution, which the Defendants claimed were time-barred:

- Ex post facto violation;
- Violations of his due process rights;
- Cruel and unusual punishment;
- Violation of his right against self-incrimination;
- Violation of due process due to vagueness; and
- Unlawful bill of attainder.[19]

In their motion for summary judgment, the Defendants asserted that "the one-year statute of limitations for § 1983 actions also applies to violations of the Tennessee Constitution, which often mirror the federal claims." As authority for this statement, the Defendants cited a footnote from *Mata-Cuellar v. Tennessee Department of Safety*, No. 3:10-0619, 2010 WL 3732172, at \*4 n.2 (M.D. Tenn. Sept. 20, 2010), in which the district judge

---

[19]We do not mention here Nunn's claim regarding separation of powers under the Tennessee Constitution because the Defendants did not move for summary judgment on this claim based on the statute of limitations, and the trial court did not find that it was time-barred. This claim will be discussed separately hereinafter.

stated, "The court could find no case law addressing what the statute of limitations for a Tennessee Constitution claim might be, but, if such a claim is viable, the one-year limitation for Section 1983 claims, which will often mirror the state constitutional claim, certainly seems appropriate." The district judge referenced "the one-year statute of limitations that appears to apply" when discussing an issue regarding certification of a class action. *Id.* at \*4. In the case before us, the trial judge cited *Mata-Cuellar* approvingly when concluding that the one year statute of limitations applicable to section 1983 actions, found at Tennessee Code Annotated section 28-3-104(a), should also apply to claims alleging violations of the Tennessee Constitution.

We respectfully disagree with the trial court's conclusion. Tennessee Code Annotated section 28-3-104(a)(1)(B) provides a one year statute of limitations for "[c]ivil actions . . . brought under the *federal* civil rights statutes." (Emphasis added.) We cannot agree with the trial court's conclusion that the statute of limitations applicable to actions "brought under the federal civil rights statutes," Tenn. Code Ann. § 28-3-104(a)(1)(B), should also apply to claims alleging violations of the Tennessee Constitution. "While 42 U.S.C. § 1983 expressly provides a remedy for the violation of *federally protected rights*, numerous courts have held that a claimed violation of a state constitution is not cognizable under § 1983." *Johnston v. Swing*, No. M2012-01760-COA-R3-CV, 2013 WL 3941026, at \*4 (Tenn. Ct. App. July 26, 2013) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005)). Accordingly, this is not a situation in which Nunn could have asserted his state constitutional claims in a section 1983 action. Nunn's request for declaratory relief under the UAPA regarding the Tennessee Constitution did not seek the same relief that was otherwise available in a claim under section 1983. And even if it had, for the reasons discussed in the previous section, the section 1983 remedy would be supplementary to any state law remedies.

We also recognize that Tennessee courts have the authority to interpret the Tennessee Constitution differently than the federal constitution. *State v. Tuttle*, 515 S.W.3d 282, 307 (Tenn. 2017). Generally, the Tennessee Supreme Court "'will not interpret a state constitutional provision differently than a similar federal constitutional provision unless there are sufficient textual or historical differences, or other grounds for doing so.'" *State v. Pruitt*, 510 S.W.3d 398, 415 (Tenn. 2016) (quoting *Phillips v. Montgomery Cnty.*, 442 S.W.3d 233, 243 (Tenn. 2014)). Still, our state constitutional protections "remain on the books" and "provide an alternative theory for relief." *See* Sutton, Jeffrey S., *What Does -- and Does Not -- Ail State Constitutional Law*, 59 Kan. L. Rev. 687, 712-13 (2011) (recognizing "a chronically underappreciated subject: the role of the constitutions of the fifty states in American constitutionalism"). "[S]tate constitutional law is no less a form of American constitutional law than federal constitutional law." *Id.* at 687. Recognizing the independent source of such claims, we

conclude that Nunn's claims for declaratory relief alleging violations of the Tennessee Constitution are not subject to the statute of limitations set forth in Tennessee Code Annotated section 28-3-104(a)(1)(B) for civil actions "brought under the federal civil rights statutes."

When no specific statute of limitations can be identified as applicable, the general ten-year statute of limitations applies. *See Witty*, 2011 WL 2570754, at *9. Finding no statute of limitations applicable to Nunn's UAPA declaratory claims alleging violations of the Tennessee Constitution, we conclude that such claims are subject to the general ten-year statute of limitations. *See Hughley*, 208 S.W.3d at 395 (applying the ten-year statute of limitations to a prisoner's UAPA declaratory judgment action where he was not seeking the same relief otherwise available in another statutory proceeding).

Because the general ten year statute of limitations applies to Nunn's UAPA claims for declaratory relief alleging violations of the United States and Tennessee Constitutions, the trial court erred in finding those claims time-barred. Due to its ruling regarding the statute of limitations, the trial court did not consider the substantive merit of Nunn's constitutional claims, with three exceptions. The trial court found that Nunn's claims regarding vagueness and separation of powers were facial challenges to the relevant statutes, and the trial court analyzed the merits of those two claims. In addition, even though the trial court deemed it time-barred, the court engaged in an "alternative analysis" of Nunn's *ex post facto* claim. So, the trial court considered the merits of these three claims but did not reach the other issues.

On appeal, we decline Nunn's invitation to review the substantive merit of *any* constitutional claims that we find were not barred by the statute of limitations, even in the absence of a ruling by the trial court on those issues. Tennessee appellate courts generally do not address issues that were not adjudicated by the trial court. *See Hagewood v. Am. Cas. Co. of Reading, Pa.*, No. M2005-02003-WC-R3-CV, 2006 WL 3455200, at *4 (Tenn. Workers Comp. Panel Nov. 29, 2006); *Bowers v. Estate of Mounger*, No. E2016-01724-COA-R3-CV, 2017 WL 2820071, at *11 (Tenn. Ct. App. June 29, 2017); *Voigt v. Plate*, No. E2016-00473-COA-R3-CV, 2017 WL 776093, at *9 (Tenn. Ct. App. Feb. 28, 2017); *Mid-S. Maint. Inc. v. Paychex Inc.*, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at *14 (Tenn. Ct. App. Aug. 14, 2015); *Fisher v. Ankton*, No. W2014-00882-COA-R3-CV, 2015 WL 2107752, at *8 (Tenn. Ct. App. May 5, 2015); *Rock-Tenn Converting Co. v. City of Memphis*, No. W2014-00626-COA-R3-CV, 2014 WL 4415943, at *9 (Tenn. Ct. App. Sept. 9, 2014); *Coleman v. Humane Soc'y of Memphis*, No. W2012-02687-COA-R9-CV, 2014 WL 587010, at *17 n.11 (Tenn. Ct. App. Feb. 14, 2014); *Blackwell v. Comanche Constr., Inc.*, No. W2012-01309-COA-R9-CV, 2013 WL 1557599, at *4 (Tenn. Ct. App. Apr. 15, 2013); *Shaffer v. Memphis Airport Auth., Serv. Mgmt. Sys., Inc.*, No. W2012-00237-COA-R9CV, 2013 WL 209309,

at \*4 (Tenn. Ct. App. Jan. 18, 2013). As a court of appeals, "we are limited in authority to the adjudication of issues that are *presented and decided* in the trial courts." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 31-32 (Tenn. 2001).

We remand for the trial court to consider, in the first instance, Nunn's claims for declaratory relief under the UAPA for the alleged constitutional violations regarding due process, cruel and unusual punishment, equal protection, the privileges and immunities clause, self-incrimination, unconstitutional taking, and unlawful bills of attainder. We will review the trial court's substantive rulings resolving Nunn's claims regarding separation of powers, ex post facto issues, and unconstitutional vagueness. Finally, we will review Nunn's argument regarding the non-constitutional issue substantively addressed by the trial court, regarding compliance with the UAPA.

## B. Separation of Powers

In his amended complaint, Nunn alleged that the application of the statutes regarding community supervision for life violates the separation of powers principles set forth in Article II, sections I, II, and III of the Tennessee Constitution. He asserted that the statutes "impermissibly vest a purely legislative power" in the Department of Correction, which is an agency of the executive branch of government. Although he recognized that the General Assembly may grant power to an administrative agency to promulgate rules and regulations, Nunn claimed that in this case, the General Assembly impermissibly delegated to an agency its discretion as to "what the law shall be." Again, Tennessee Code Annotated section 39-13-524(d)(1) provides:

> (d)(1) A person on community supervision shall be under the jurisdiction, supervision and control of the department of correction in the same manner as a person under parole supervision. *The department is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person.*

(Emphasis added.) Nunn's amended complaint alleged that "[t]he 'individual basis' authorization granted in the above statutory provision vests the [Department of Correction] with the power to create specific supervision criteria and conditions for persons supervised pursuant to the statute." Nunn claimed that the conditions of supervision are arbitrarily created, implemented, and modified at the complete discretion of the Department. Because each violation of a condition of community supervision constitutes a separate criminal offense pursuant to Tennessee Code Annotated section 39-13-526, Nunn argued that the Department's conditions of supervision "function entirely and specifically as *criminal statutes* for which a person can be charged and convicted for

29

specific acts which were entirely outside the contemplation of the General Assembly." He asserted that this power effectively conveys to a parole officer the authority to create a penal statute. Thus, Nunn claimed that a "legislative function" was impermissibly vested in the TDOC without sufficient standards or guidelines to determine legislative intent.

When evaluating the constitutionality of a statute, "we begin with the presumption that an act of the General Assembly is constitutional" and "resolve every doubt in favor of the statute's constitutionality." *Gallaher v. Elam*, 104 S.W.3d 455, 459-60 (Tenn. 2003) (quotation omitted). "Due to the strong presumption that acts of the General Assembly are constitutional, the party attacking the constitutionality of a statute 'must bear a heavy burden in establishing some constitutional infirmity of the Act in question.'" *Id.* (quoting *West v. Tenn. Hous. Dev. Agency*, 512 S.W.2d 275, 279 (Tenn. 1974)).

Article II section 1 of the Tennessee Constitution provides, "The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial." Section 2 provides: "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." Tenn. Const. art. II, § 2. Section 3 provides, in relevant part, that "[t]he Legislative authority of this State shall be vested in a General Assembly[.]" Tenn. Const. art. II, § 3. Still, "the doctrine of separation of powers is not absolute," as "the functions of the three branches of government often overlap." *Gallaher*, 104 S.W.3d at 463 (citing *State v. King*, 973 S.W.2d 586, 588 (Tenn. 1998)). For instance, "the General Assembly may delegate to an administrative agency the authority to implement the expressed policy of particular statutes." *Id.* at 464 (citing *State v. Edwards*, 572 S.W.2d 917, 919 (Tenn. 1978)). A grant of such authority to an administrative agency may include the power to promulgate rules and regulations in the agency's area of operation. *Id.* (citing *Bean v. McWherter*, 953 S.W.2d 197, 199 (Tenn. 1997)). In that case, "the enactment of reasonable rules and regulations is administrative in character, [and] it does not amount to the exercise of a legislative function, despite the agency's exercise of discretion." *Id.*

The separation of powers argument presented by Nunn has already been considered by the Tennessee Court of Criminal Appeals. In *State v. Grainger*, No. M2012-02545-CCA-R3-CD, 2014 WL 2803526 at *3 (Tenn. Crim. App. June 18, 2014), *perm. app denied* (Tenn. Nov. 20, 2014), a criminal defendant was convicted of three counts of knowingly violating a condition of community supervision for life, including one count for possessing alcohol, another count for failure to successfully complete sex offender treatment, and a third count for viewing pornography. The defendant argued on appeal that Tennessee Code Annotated section 39-13-524(d)(1) violates Article II, section 3 of the Tennessee Constitution, providing that the legislative authority of this state shall be vested in the General Assembly. Because of the similarity of the issues

presented, we quote from the court's thorough discussion of the separation of powers issue at length:

Defendant asserts that the General Assembly unconstitutionally delegated its lawmaking authority to the Department of Correction (which by legislation took the place of the Board of Probation and Parole after Defendant was placed on CSL [community supervision for life]) by enacting Tennessee Code Annotated section 39-13-524(d)(1). Specifically, Defendant argues that Tennessee Code Annotated section 39-13-524(d)(1) unlawfully authorized an executive branch entity to define a criminal act and the scope of its applicability. In other words, according to Defendant, by granting an executive branch entity the power to define and create certain conditions of CSL, and by stating that a knowing violation of any such condition is a crime as set forth in Tennessee Code Annotated section 39-13-526, the General Assembly authorized the executive branch to act in a legislative capacity to define and proscribe criminal acts.

In support of his argument, Defendant directs our attention to the wording of Tennessee Code Annotated section 39-13-526(b)(1), which states, "(b)(1) If the conduct that is a violation of a condition of community supervision does not constitute a criminal offense, the violation is a Class A misdemeanor." Defendant implicitly asserts that a plain reading of this section of the statute clearly shows that under the challenged statute (Tenn. Code Ann. § 39-13-524(d)(1)), the Board of Probation and Parole (now the Department of Correction) is authorized to criminalize an act or omission that the General Assembly has not criminalized, simply by including the act or omission as a condition of CSL. Defendant acknowledges that there are some restrictions on the executive branch when determining the individualized conditions. That is, the specialized conditions must be "necessary to protect the public from the [defendant's] committing a new sex offense, as well as promoting the rehabilitation of the person." Tenn. Code Ann. § 39-13-524(d)(1). However, Defendant argues that this "policy statement" is "too broad" to provide any restriction on what can be a condition of CSL, which becomes the basis of a criminal charge upon being included as a condition of CSL, even if the act is otherwise not a crime.

. . . .

Defendant relies upon *Tasco v. Long*, 212 Tenn. 96, 368 S.W.2d 65 (Tenn. 1963) for the well settled proposition that the General Assembly cannot delegate its law making authority. Defendant concedes, however, that even in criminal cases, the General Assembly may delegate to agencies or departments of the executive branch rule making authority pertaining to "implementation of criminal laws and criminal sanctions created by the

General Assembly." Defendant argues that the language in Tennessee Code Annotated section 39-13-524(d)(1) fails to establish meaningful standards for the executive branch to follow and in fact provides complete discretion in legislative activity to the executive branch. Our supreme court has set forth the law regarding this issue as follows:

Article II, section 3 of the Tennessee Constitution vests the state's legislative power in the General Assembly. In general, "legislative power" is "the authority to make, order, and repeal law." *Id.* The General Assembly may not delegate power that is "purely legislative." *State v. Edwards*, 572 S.W.2d 917, 919 (Tenn. 1978); see also *Chattanooga–Hamilton County Hosp. Auth. v. Chattanooga*, 580 S.W.2d 322, 328 (Tenn. 1979). Therefore, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be. *See Dep't of Pub. Welfare v. Nat'l Help "U" Ass'n*, 197 Tenn. 8, 270 S.W.2d 337, 339 (1954). However, the General Assembly may delegate to an administrative agency the authority to implement the expressed policy of particular statutes. *See Edwards*, 572 S.W.2d at 919. A grant of such authority may include the power to promulgate rules and regulations that have the effect of law in the agency's area of operation. *See Bean v. McWherter*, 953 S.W.2d 197, 199 (Tenn. 1997). Because the enactment of reasonable rules and regulations is administrative in character, it does not amount to the exercise of a legislative function, despite the agency's exercise of discretion. *See Tasco Developing & Bldg. Corp. v. Long*, 212 Tenn. 96, 368 S.W.2d 65, 68-69 (1963); *see also INS v. Chadha*, 462 U.S. 919, 953 n. 16, 103 S. Ct. 2764, 77 L.Ed.2d 317 (1983) (noting that rulemaking by administrative agencies resembles lawmaking).

The test for determining whether a legislature's delegation of power to an administrative agency is unconstitutional is "whether the statute contains sufficient standards or guidelines to enable both the agency and the courts to determine if the agency is carrying out the legislature's intent." *Bean*, 953 S.W.2d at 199.

*Gallaher v. Elam*, 104 S.W.3d 455, 464 (Tenn. 2003).

In *Bean v. McWherter*, 953 S.W.2d 197 (Tenn. 1997), our supreme court also held that,

> Detailed or specific legislation may be neither required nor feasible when the subject matter requires an agency's expertise and flexibility to deal with complex and changing conditions.
>
> The requirement of expressed standards may also be relaxed when the discretion to be exercised relates to or regulates for the protection of the public's health, safety, and welfare.

*Bean*, 953 S.W.2d at 199.

> By legislative enactment, any individualized conditions of CSL must be necessary to protect the public from the defendant committing an additional sex offense and promote the rehabilitation of the defendant. Obviously, these relate to the public's safety and welfare. The standards in the statute enable both the executive branch and the judicial branch to determine if the executive branch is carrying out the intent of the General Assembly. We hold that under *Bean* and *Gallaher*, Tennessee Code Annotated section 39-13-524(d)(1) does not violate Article II, section 3 of the Tennessee Constitution. Defendant is not entitled to relief on this issue.

*Grainger*, 2014 WL 2803526, at *4-5; *see also State v. Grammer*, No. E2016-00497-CCA-R3-CD, 2017 WL 1177069, at *1 (Tenn. Crim. App. Mar. 29, 2017), *perm. app. denied* (Tenn. June 9, 2017) (recognizing the holding in *Grainger*); *State v. Kennedy*, No. E2011-00769-CCA-R3-CO, 2012 WL 2109286, at *5 (Tenn. Crim. App. June 12, 2012), *perm. app. denied* (Tenn. Feb. 15, 2013) (rejecting a defendant's argument that the statutes providing for community supervision for life violate the separation of powers doctrine by impermissibly vesting a purely legislative power in an executive branch agency).

On appeal, Nunn acknowledges the holding in *Grainger* but argues that it is not entitled to much weight because "there does not appear to have been any significant evidentiary record concerning the promulgation and scope of CSL given that the case arose in the context of a conviction for violating CSL." He also argues that the other cases addressing this issue, such as *Kennedy*, "do not appear to have had any evidentiary record regarding the Sex Offender Directives."

33

We cannot determine the extent of the evidentiary record before the Court of Criminal Appeals based on its opinions. Still, we do not agree with Nunn's suggestion that the size of the evidentiary record in this case necessitates a different result. The *Grainger* court carefully considered the same arguments and the same statutory language that Nunn challenges here and concluded that the statutes provide sufficient guidelines to enable the executive branch and the judicial branch to determine if the agency is carrying out the legislative intent. *Id.* at *5. The *Grainger* court noted that any individualized conditions of community supervision for life must be, according to the statute, necessary to protect the public from the defendant committing an additional sex offense and promote the rehabilitation of the defendant. *Id.* Because these issues relate to the public's safety and welfare, the court explained, the requirement of expressed standards may be relaxed. *Id.* We agree with the thorough and well-reasoned opinion in *Grainger* and adopt its reasoning. We likewise conclude that the statutes regarding community supervision for life do not violate Article II sections 1 through 3 of the Tennessee Constitution.

### C. Vagueness

Next, we address the allegation of unconstitutional vagueness. Nunn asserts that Tennessee Code Annotated sections 39-13-524 and 39-13-526 are unconstitutionally vague "because persons of ordinary intelligence may not understand what conduct is prohibited." Nunn claims the statutes are so vague that persons must necessarily guess at their meaning and differ as to their application.

"'[T]he root of the vagueness doctrine is a rough idea of fairness.'" *Moncier v. Bd. of Prof'l Responsibility*, 406 S.W.3d 139, 152 (Tenn. 2013) (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)). The Tennessee Supreme Court recently explained the vagueness doctrine in *State v. Crank*, 468 S.W.3d 15, 22-23 (Tenn. 2015):

> "'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.'" *State v. Pickett*, 211 S.W.3d 696, 704 (Tenn. 2007) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L.Ed.2d 222 (1972)). By virtue of the Due Process Clause of the Fourteenth Amendment to the Federal Constitution and article I, section 8 of the Tennessee Constitution,[20] a criminal statute cannot be enforced when it prohibits conduct "'in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* (quoting *Leech v. Am.*

---

[20]The Fourteenth Amendment to the United States Constitution and Article I, section 8 of the Tennessee Constitution are synonymous and provide the same protection with regard to the vagueness doctrine. *City of Knoxville v. Entm't Res., LLC*, 166 S.W.3d 650, 655 (Tenn. 2005).

*Booksellers Ass'n*, 582 S.W.2d 738, 746 (Tenn. 1979)). The primary purpose of the vagueness doctrine is to ensure that our statutes provide fair warning as to the nature of forbidden conduct so that individuals are not "held criminally responsible for conduct which [they] could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 98 L.Ed. 989 (1954). In evaluating whether a statute provides fair warning, the determinative inquiry "is whether [the] statute's 'prohibitions are not clearly defined and are susceptible to different interpretations as to what conduct is actually proscribed.'" *Pickett*, 211 S.W.3d at 704 (quoting *State v. Forbes*, 918 S.W.2d 431, 447-48 (Tenn. Crim. App. 1995)); *see also State v. Whitehead*, 43 S.W.3d 921, 928 (Tenn. Crim. App. 2000).

A second, related purpose of the vagueness doctrine is to ensure that our criminal laws provide "minimal guidelines to direct law enforcement." *State v. Smith*, 48 S.W.3d 159, 165 (Tenn. Crim. App. 2000) (citing *Forbes*, 918 S.W.2d at 448). The vagueness doctrine does not permit a statute that "authorizes and encourages arbitrary and discriminatory enforcement," *State v. Harton*, 108 S.W.3d 253, 259 (Tenn. Crim. App. 2002) (citing *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999)), which typically occurs when a statute "delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis," *Davis-Kidd Booksellers, Inc. v. McWherter*, 866 S.W.2d 520, 531 (Tenn. 1993) (citing *Grayned*, 408 U.S. at 108-109, 92 S. Ct. 2294).

Despite the importance of these constitutional protections, this Court has recognized the "inherent vagueness" of statutory language, *Pickett*, 211 S.W.3d at 704, and has held that criminal statutes do not have to meet the unattainable standard of "absolute precision," *State v. McDonald*, 534 S.W.2d 650, 651 (Tenn. 1976); *see also State v. Lyons*, 802 S.W.2d 590, 592 (Tenn. 1990) ("The vagueness doctrine does not invalidate every statute which a reviewing court believes could have been drafted with greater precision, especially in light of the inherent vagueness of many English words."). In evaluating a statute for vagueness, *courts may consider the plain meaning of the statutory terms, the legislative history, and prior judicial interpretations of the statutory language. See Lyons*, 802 S.W.2d at 592 (reviewing prior judicial interpretations of similar statutory language); *Smith*, 48 S.W.3d at 168 ("The clarity in meaning required by due process may . . . be derived from legislative history.").

(Emphasis added.)

We begin with an examination of the statutory language. The statutes challenged by Nunn are Tennessee Code Annotated sections 39-13-524 and -526. Section 39-13-524(d)(1) provides:

> A person on community supervision shall be under the jurisdiction, supervision and control of the department of correction in the same manner as a person under parole supervision. The department is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person.

Section -526 then provides, in pertinent part:

> It is an offense for a person to knowingly violate a condition of community supervision imposed upon the person pursuant to § 39-13-524.

Tenn. Code Ann. § 39-13-526(a).[21] The Tennessee Supreme Court has acknowledged that when a sex offender is subject to community supervision for life, he or she must "regularly report to a parole officer who is granted wide discretion in imposing supervisory requirements" for each offender. *Ward*, 315 S.W.3d at 474.

We also look to the legislative history. Before these particular statutes were adopted in 1996, the Tennessee General Assembly adopted the Tennessee Standardized Treatment Program for Sex Offenders Act in 1995. Tenn. Code Ann. § 39-13-701, *et seq*. The Act declared that "the comprehensive evaluation, identification, treatment, and continued monitoring of sex offenders who are subject to the supervision of the criminal justice system are necessary in order to work toward the elimination of recidivism by the offenders." Tenn. Code Ann. § 39-13-702(a). Accordingly, the Act created "a program that standardizes the evaluation, identification, treatment, and continued monitoring of sex offenders at each stage of the criminal justice system, so that the offenders will curtail recidivistic behavior, and so that the protection of victims and potential victims will be enhanced." Tenn. Code Ann. § 39-13-702(b). The Act also created, in the Department of

---

[21]Tennessee Code Annotated section 39-13-526(b) further provides:

> (b)(1) If the conduct that is a violation of a condition of community supervision does not constitute a criminal offense, the violation is a Class A misdemeanor.
> (2) If the conduct that is a violation of a condition of community supervision also constitutes a criminal offense that is classified as a misdemeanor, the violation is a Class A misdemeanor.
> (3) If the conduct that is a violation of a condition of community supervision also constitutes a criminal offense that is classified as a felony, the violation is a Class E felony.

Correction, a twelve-member (and later, thirteen-member) "sex offender treatment board." Tenn. Code Ann. § 39-13-704(a). The sex offender treatment board had several duties, including the following:

> The board shall develop guidelines and standards for a system of programs for the treatment of sex offenders that can be utilized by offenders who are placed on probation, incarcerated with the department of correction, placed on parole, or placed in community corrections. The programs developed shall be as flexible as possible, so that such programs may be utilized by each offender to prevent the offender from harming victims and potential victims. The programs shall be structured in a manner that the programs provide a continuing monitoring process, as well as a continuum of treatment programs for each offender as that offender proceeds through the criminal justice system, and may include, but shall not be limited to, polygraph examinations by therapists and probation and parole officers, group counseling, individual counseling, outpatient treatment, inpatient treatment, or treatment in a therapeutic community. The programs shall be developed in a manner that, to the extent possible, the programs may be accessed by all offenders in the criminal justice system. . . .

Tenn. Code Ann. § 39-13-704(d)(2).

When the statutes regarding community supervision for life, Tennessee Code Annotated sections 39-13-524 to -526, were enacted in 1996, the general assembly also amended the statute governing the Board of Probation and Parole to expressly provide that the Board had the power "[t]o establish conditions of supervision for and supervise sex offenders sentenced to community supervision for life pursuant to Tennessee Code Annotated, Section 39-13-524." *See* 1996 Pub. Acts, c. 972, § 2 (amending Tennessee Code Annotated section 40-28-104). The "Bill Summary" for the corresponding senate bill explained that "The conditions of such supervision shall be established on an individual basis to ensure that such person does not commit new sex offenses." http://wapp.capitol.tn.gov/apps/BillInfo/default.aspx?BillNumber=HB2575&GA=99.

Specialized conditions of community supervision for life for sex offenders known as the "Sex Offender Directives" were approved by the Sex Offender Treatment Board on April 26, 1999, and were adopted and implemented by the Board of Probation and Parole on or about the same date. When the Board of Probation and Parole established the Sex Offender Directives, it also "granted probation and parole officers some discretion imposing the conditions already established by the board as deemed appropriate based on

the particular offender's risks and needs."[22]

After the Department of Correction assumed responsibility for the community supervision for life program on July 1, 2012, the commissioner of correction sent a memorandum on July 2, 2012, stating that the Department thereby adopted all existing policies of the field services division of the Board of Probation and Parole going forward, with the understanding that the policies would be revised and rewritten as the implementation process moved forward. (The record contains no evidence to demonstrate that the Department of Correction has otherwise taken formal action to adopt the Sex Offender Directives, and the Department claims that it has not done so.)[23] However, pursuant to the current administrative procedures promulgated by the Department of Correction regarding community supervision for life, sex offenders sentenced to community supervision for life must comply with "the TDOC specialized conditions for sex offenders [and] the CSL rules."

Finally, we consider prior judicial interpretations of the statutory language. In *Kennedy*, in addition to considering the separation of powers issue discussed above, the Court of Criminal Appeals considered a defendant's argument that the statutes providing for community supervision for life were "void for vagueness" because the statutes failed to detail or specify the conditions of community supervision. *Kennedy*, 2012 WL 2109286, at *4. The court rejected this argument as follows:

> "A statute is void for vagueness if it is so vague, indefinite, and uncertain that persons must speculate as to its meaning, and if it fails to give a person of ordinary intelligence fair notice that his or her conduct is forbidden by the statute." *State v. Whaley*, 982 S.W.2d 346, 348 (Tenn. Crim. App. 1997). "The vagueness doctrine does not invalidate every statute which a reviewing court believes could have been drafted with greater precision."

---

[22]The Board of Probation and Parole adopted a policy providing that sex offenders "shall be supervised pursuant to the conditions of parole, the sex offender unit manual, the Standards of Supervision [that an Officer schedules on behalf of each offender] and the directives as adopted by both the Board and SOTB [sex offender treatment board]." The policy defined "directives" as "rules in addition to the general conditions [governing all parolees] that a sex offender on probation or parole supervision is expected to follow, when the Court or Board, respectively, has imposed that special condition."

[23]The 2012 legislation also added Tennessee Code Annotated section 40-28-602, which required the commissioner of correction to appoint a director of probation of parole who shall, under the supervision of the commissioner, "[e]stablish conditions of supervision for and supervise sex offenders sentenced to community supervision for life pursuant to § 39-13-524." *See* 2012 Pub. Acts, c. 727, § 43. The parties do not mention this statute on appeal or whether such a director was appointed.

*State v. Lyons*, 802 S.W.2d 590, 592 (Tenn. 1990). Here, the relevant statute clearly establishes the prohibited conduct, and that the Defendant would be placed under the Board of Probation and Parole's supervision for life.

*Id.* at *7. A federal district court has also considered and rejected the argument that the community supervision for life statutes are unconstitutionally vague. In *Reagan v. Bredesen*, No. 3:07-CV-199, 2008 WL 901496, at *2 (E.D. Tenn. Mar. 31, 2008), the district court explained:

> Plaintiffs claim that the conditions of community supervision, to which they are subject and for which violation they can be prosecuted, are not outlined in the statutes themselves and thus are facially vague. Conditions of community supervision, however, have been promulgated by the Board of Probation and Parole for the State of Tennessee pursuant to authority granted by the legislature. . . .
>
> The conditions with which a sex offender must comply are clearly set forth and are not vague. Accordingly, plaintiffs have failed to state a due process violation. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) ("the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement").

*Id.; see also Daniel v. Bredesen*, No. 3:07-CV-175, 2008 WL 901506, at *3 (E.D. Tenn. Mar. 31, 2008).

In the case before us, the trial court concluded that Tennessee Code Annotated sections 39-13-524 and -526 are not void for vagueness because they "are clear regarding the criminal conduct that is prohibited, and the Sex Offender Directives are equally unambiguous and are directly related to protecting the public and promoting Petitioner's rehabilitation."

Nunn's argument on appeal regarding vagueness is somewhat difficult to follow. Constitutional challenges asserting that a statute is void for vagueness may be either facial challenges or as applied challenges. *See Crank*, 468 S.W.3d at 24. Here, Nunn insists that he "is not making a facial challenge to CSL and, indeed, is not assailing his CSL sentence. . . . this is an 'as applied,' declaratory judgment suit." "It is typically preferable for courts to address constitutional challenges on an as-applied basis, thereby limiting the analysis to the facts of the case at hand." *Crank*, 468 S.W.3d at 24. Accordingly, we will limit our review to an as-applied challenge and consider "how [the

statute] operates in practice against the particular litigant and under the facts of the instant case, not hypothetical facts in other situations." *Id.* at 24 n.5. Again, however, we begin with the presumption that the statute is constitutional. *Gallaher*, 104 S.W.3d at 459. A party challenging the constitutionality of a statute carries a heavy burden to overcome that presumption. *Id*. at 459-60.

The issue Nunn presents in his brief focuses on the statutes themselves -- "Whether Tenn. Code Ann. 39-13-524 and 39-13-526 are unconstitutionally vague[.]" In general, he notes that vague statutes do not give fair notice that certain activities may be unlawful and do not set reasonably clear guidelines for law enforcement officials and courts, inviting arbitrary and discriminatory enforcement. *State v. Forbes*, 918 S.W.2d 431, 448 (Tenn. Crim. App. 1995). In an attempt to demonstrate the vagueness of the *statutes*, Nunn suggests that several of the individualized *conditions* set forth in the Sex Offender Directives are vague and subject to differing interpretations by different supervising officers. For example, Nunn points to directives providing that sex offenders such as Nunn may not "befriend" any person with minor children, may not possess pornography, and may not work where services are provided to children. He notes that the directives also provide that a sex offender's supervising officer can create conditions of individual supervision deemed appropriate by the officer. As we perceive his argument, Nunn essentially complains that the governing statutes impermissibly leave the details regarding conditions of supervision open to a supervising officer's interpretation and discretion.

A special condition for an offender's supervision may be added at the discretion of the officer. Over the years during which Nunn has been subject to community supervision, his various supervising officers have differed as to whether he can attend weddings or professional football games. One officer told Nunn that his wife could have alcohol in the house while another said it was not acceptable. Nunn's supervising officers have also differed as to what it means to "befriend" someone. Nunn claims that these differences of opinion are especially noteworthy because he can be charged with a criminal offense if he violates a condition of his supervision.

In our view, the fact that Nunn's supervising officers have differed as to the *individualized* conditions they have imposed on Nunn over the years does not render the governing statutes unconstitutionally vague. The "void for vagueness" doctrine is based on fairness and is intended "'only to give 'fair warning' of prohibited conduct.'" *State v. Thomas*, No. E2013-01738-CCA-R3-CD, 2015 WL 513583, at *28 (Tenn. Crim. App. Feb. 5, 2015), *perm. app. denied* (Tenn. Aug. 12, 2015) *cert. denied* 136 S. Ct. 1458, 194 L. Ed. 2d 559 (2016) (quoting *Phillips v. State Bd. of Regents of State Univ. and Cmty.*, 863 S.W.2d 45, 48-49 (Tenn. 1993)). "A law is not void for vagueness if an 'ordinary person exercising ordinary common sense' can sufficiently understand the law and

comply with [it.]"[24]  *Moncier*, 406 S.W.3d at 152 (quoting *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974)).  Statutes that are "applicable in a wide variety of situations, must necessarily use words of general meaning, because greater precision is both impractical and difficult," and this does not render the statute unconstitutionally vague.  *State v. Lyons*, 802 S.W.2d 590, 592 (Tenn. 1990).  "Absolute precision in drafting prohibitory legislation is not required since prosecution could then easily be evaded by schemes and devices."  *State v. Wilkins*, 655 S.W.2d 914, 916 (Tenn. 1983).  And, as noted in the previous section regarding separation of powers,

> Detailed or specific legislation may be neither required nor feasible when the subject matter requires an agency's expertise and flexibility to deal with complex and changing conditions.
> The requirement of expressed standards may also be relaxed when the discretion to be exercised relates to or regulates for the protection of the public's health, safety, and welfare.

*Bean*, 953 S.W.2d at 199.  The statutes regarding community supervision for life obviously relate to public safety and welfare.  *Grainger*, 2014 WL 2803526, at *5.  According to section 39-13-524, "The department is authorized *on an individual basis* to establish such conditions of community supervision as are necessary to protect the public from *the person's* committing a new sex offense, as well as promoting the rehabilitation of *the person*."  Tenn. Code Ann. § 39-13-524(d)(1) (emphasis added).  Thus, the statute contemplates that individualized and differing conditions may be applied to each sex offender to protect the public and promote the offender's rehabilitation.  As a result, Nunn is subject to the Sex Offender Directives and any specialized conditions imposed by his supervising officer.  Over the years, he has been made aware of the individualized conditions imposed on him by each supervising officer and has not been charged with violating any condition of his community supervision due to any inadvertent violation.[25]

---

[24]For example, in *Wells v. Tennessee Board of Regents*, 9 S.W.3d 779, 788 (Tenn. 1999), the supreme court explained that a statute providing for dismissal of a tenured professor for "capricious disregard of accepted standards of professional conduct" was not void for vagueness, even though the employee "must use common sense in discerning what is appropriate behavior."

[25]*See, e.g.*, *Corzine v. Laxalt*, No. 3:17-CV-00052-MMD-WGC, 2017 WL 3159990, at *4 (D. Nev. July 25, 2017) (rejecting a sex offender's "void for vagueness" challenge to Nevada's lifetime supervision program on the basis that the statute created a punishment for violating any conditions imposed by the parole board without spelling out those conditions, as this argument "misstates how the statute actually functions" and the defendant "could not have been punished for violating any conditions until *after* they had actually been imposed, thereby giving him sufficient notice of the prohibited conduct"); *State v. Bond*, 365 N.J. Super. 430, 436, 839 A.2d 888, 891 (App. Div. 2003) (rejecting a void for vagueness challenge to a statute providing that persons on supervision for life would be supervised "as if on parole and subject to conditions

Thus, considering the effect of the statutes as applied to Nunn and how they operate under the facts of this case, he has received sufficient notice of his individualized conditions and what the statutes require of him.

Furthermore, section 39-13-526 provides that "[i]t is an offense for a person to *knowingly* violate a condition of community supervision imposed upon the person pursuant to § 39-13-524." Tenn. Code Ann. § 39-13-526(a) (emphasis added). As noted above, "The primary purpose of the vagueness doctrine is to ensure that our statutes provide fair warning as to the nature of forbidden conduct so that individuals are not 'held criminally responsible for conduct which [they] could not reasonably understand to be proscribed.'" *Crank*, 468 S.W.3d at 22-23 (quoting *Harriss*, 347 U.S. at 617). The "void for vagueness" doctrine "prohibits holding an individual criminally liable for conduct that a person of common intelligence would not have reasonably understood to be proscribed." *Thomas*, 2015 WL 513583, at *28. Consequently, a statute's "scienter requirements alleviate vagueness concerns." *Gonzales v. Carhart*, 550 U.S. 124, 149, (2007) (rejecting a void for vagueness challenge, explaining that a statute's requirement of deliberate and intentional action would prevent criminal liability for one acting by mistake and therefore the statute did not serve as a trap for one acting in good faith). "[T]he constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.*" *Colautti v. Franklin*, 439 U.S. 379, 395 (1979).

> [T]he requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives no warning. But *where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.* The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain. But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.

*Screws v. U.S.*, 325 U.S. 91, 101-02 (1945) (citation omitted) (emphasis added).

A scienter requirement in a statute also "narrow[s] the scope of [its] prohibition

appropriate to protect the public and foster rehabilitation").

and limit[s] prosecutorial discretion." *McFadden v. U.S.*, 135 S. Ct. 2298, 2307 (2015) (quoting *Gonzales*, 550 U.S. at 149-150). Considering that Tennessee Code Annotated section 39-13-526 provides that it is an offense for a person to "knowingly violate" a condition of supervision, the statute provides the necessary "minimal guidelines to direct law enforcement" and does not authorize arbitrary and discriminatory enforcement. *Crank*, 468 S.W.3d. at 22-23; *see Boyce Motor Lines, Inc. v. U.S.*, 342 U.S. 337, 342 (1952) ("The statute punishes only those who knowingly violate the Regulation. This requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the Regulation would be so unfair that it must be held invalid [on the ground of vagueness].").

Having considered the statutory text, legislative history, and prior judicial interpretations of the statutory language, we conclude that Tennessee Code Annotated sections 39-13-524 and -526 are sufficiently precise to put Nunn on notice of what conduct is prohibited and provide sufficient standards for law enforcement. The statutes are not void for vagueness.

### D.    Ex Post Facto

The next issue Nunn presents in his brief is framed as follows:

> Given that Tenn. Code Ann. §§ 39-13-524 and 39-13-526 convey to the TDOC the specific power to 'alter the definition of criminal conduct' by ostensibly conferring the right to create individual, novel rules of supervision governing Petitioner's day to day conduct, all having the full force and effect of a criminal statute, whether theses punitive Sex Offender Directives derived from these statutes, but created and implemented after the commission of the Petitioner's crimes, constitute ex post facto laws as applied to petitioner in violation of the Ex Post Facto Clauses of the state and federal constitutions.

Nunn insists that he is not challenging "lifetime supervision itself" or his sentence to community supervision for life. Instead, he is challenging the set of restrictions and conditions that was "imposed on him as he was departing prison." Nunn complains that the heightened standards of supervision set forth in the Sex Offender Directives did not exist at the time of his offenses in 1997 and 1998 but were adopted in 1999, months after he pled guilty to the offenses. Nunn argues that the Board of Probation and Parole and/or the TDOC has unlawfully "created these crimes long after [Nunn] committed his offense." Nunn seeks relief from these conditions of supervision because, he alleges, their application violates the ex post facto protections of the United States and Tennessee Constitutions.

The Tennessee Supreme Court has held that "the ex post facto clause of the Tennessee Constitution has the same definition and scope as the federal ex post facto clause." *State v. Pruitt*, 510 S.W.3d 398, 402 (Tenn. 2016). The United States Constitution provides that no state shall pass any ex post facto law. U.S. Const. art. I, § 10, cl. 1. The Tennessee Constitution provides that "laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made." Tenn. Const. art. I, § 11. "The animating principle of the prohibition against ex post facto laws is basic fairness[.]" *Pruitt*, 510 S.W.3d at 410. Four categories of laws are included in the constitutional prohibition against ex post facto laws:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Id.* at 411 (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). In order to come within the prohibition of the ex post facto clause, a law must be retrospective (applying to events occurring before its enactment) and it must disadvantage the offender (by altering the definition of criminal conduct or increasing the punishment for the crime). *Id.* at 416-17.

In this case, the trial court found that "there was no new law." The trial court explained that Tennessee Code Annotated section 39-13-524 and -526 were already in effect when Nunn committed his offenses. The trial court acknowledged that "the terms of Mr. Nunn's CSL were not fully established" when he committed his offenses and that "the terms and conditions of CSL changed administratively over the years." Still, the court concluded that "the fact that the administrative details changed" did not mean that Nunn was unconstitutionally subjected to a retrospective law in violation of the ex post facto clause.

On appeal, Nunn argues that the trial court approached the issue too narrowly. He argues that the ex post facto clause can be implicated even without a substantive change in the statutory language if administrative policies or regulations having the force and effect of law are changed to his disadvantage. Because the Sex Offender Directives were implemented after the commission of his crimes, he argues that the Sex Offender

Directives constitute ex post facto laws as applied to him. Nunn appears to argue that applying the Sex Offender Directives to him implicates two categories of ex post facto laws discussed above. First, he suggests that the Sex Offender Directives have changed his punishment, inflicting a greater punishment than the law annexed to the crime when committed. Second, Nunn claims that the TDOC has altered the definition of criminal conduct with its individualized conditions of supervision and created new definitions of behavior that is criminalized, whereas before his conviction these acts were not. Nunn argues that the 1999 Sex Offender Directives essentially "define crimes" for him because a violation of the conditions of his supervision can result in incarceration.

We recognize that administrative rules and regulations are not necessarily immune from the ex post facto analysis. As this Court explained in *Utley v. Tennessee Department of Correction*, 118 S.W.3d 705, 716 n.18 (Tenn. Ct. App. 2003):

> The Ex Post Facto Clauses do not apply just to the Legislative Branch. They also apply to rules, regulations, or policies enacted by the Executive Branch exercising delegated legislative power, *Smith v. Scott*, 223 F.3d 1191, 1193-94 (10th Cir. 2000); *Prater v. United States Parole Comm'n*, 802 F.2d 948, 953-54 (7th Cir. 1986), as long as they have the force and effect of law. *Griggs v. Maryland*, 263 F.3d 355, 359 (4th Cir.2001); *Miller v. Mitchell*, 25 S.W.3d 658, 663 (Mo. Ct. App. 2000). Thus, administrative rules and policies may be subject to the Ex Post Facto Clauses' prohibitions. *Garner v. Jones*, 529 U.S. [244, 255, 120 S.Ct. 1362, 1370, 146 L.Ed.2d 236 (2000)].

However, the *Utley* Court added that "[p]olicy changes that simply clarify how an Executive Branch agency exercises pre-existing discretionary authority do not run afoul of the Ex Post Facto Clauses." *Id.* (citing *D'Joy v. New York State Div. of Parole*, 127 F. Supp. 2d 433, 439 (S.D. N.Y. 2001); *Jaami v. Conley*, 958 S.W.2d at 125-26 (declining to set aside discretionary prisoner classification policies)). The *Utley* Court also observed that "neither the federal nor the state Ex Post Facto Clause should be interpreted to require or even permit the courts to micromanage the endless array of legislative or administrative adjustments to parole policies and procedures." *Id.* at 713.

We conclude that the promulgation of the Sex Offender Directives was a policy change that simply clarified how the supervising agency would exercise its pre-existing discretionary authority. *See Utley*, 118 S.W.3d at 715 n.18. When Nunn committed his four offenses in 1997 and 1998, Tennessee Code Annotated section 39-13-524(a) provided that a person who committed aggravated sexual battery on or after July 1, 1996, "shall receive a sentence of community supervision for life." The statute continued,

A person on community supervision shall be under the jurisdiction, supervision and control of the board of probation and parole in the same manner as a person under parole supervision. The board is authorized on an individual basis to establish such conditions of community supervision as are necessary to protect the public from the person's committing a new sex offense, as well as promoting the rehabilitation of the person.

Tenn. Code Ann. § 39-13-524(d)(1). Nunn interprets this statute to mean that "[t]he 'individual conditions' of community supervision contemplated by this statute were to be 'in the same manner as a person under parole supervision.'" (quoting Tenn. Code Ann. § 39-13-524(d)(1)). He claims that the conditions of supervision that existed for persons on "normal" parole at the time of the commission of his offense "were fixed" in their application to him "and could not be made more harsh or severe." Simply put, Nunn claims that the 1999 Sex Offender Directives cannot be applied to him because they did not exist when he committed his crimes.

We respectfully disagree with Nunn's reading of the statute. It clearly provided that persons on community supervision would be "under the jurisdiction, supervision and control" of the board (now department) in the same manner as a person under parole supervision. But the very next sentence expressly stated that the board was authorized "on an individual basis" to establish the "conditions" of community supervision that were necessary to protect the public from each person's commission of a new offense and promote the rehabilitation of each person. Tenn. Code Ann. § 39-13-524(d)(1). This statutory language was sufficient to put Nunn on notice that the supervising agency could establish individualized or specialized conditions of supervision to protect the public from him and to promote his rehabilitation. The Board of Probation and Parole had the power "[t]o establish conditions of supervision" for sex offenders sentenced to community supervision for life. Tennessee Code Annotated section 40-28-104 (1996). Accordingly, we reject Nunn's assertion that the conditions of his supervision were "fixed" at the time he committed his last offense or somehow limited to those then-imposed on regular parolees. The Tennessee Supreme Court has recognized that pursuant to Tennessee Code Annotated section 39-13-524, a sex offender's supervising officer "is granted wide discretion in imposing supervisory requirements." *Ward*, 315 S.W.3d at 474; *see also Calvert v. State*, 342 S.W.3d 477, 490 (Tenn. 2011) (noting that community supervision requires "regular reporting to a parole officer who has the discretion to impose conditions of supervision").

The adoption of the Sex Offender Directives in 1999 was simply a policy change that clarified how the executive branch agency would exercise its "pre-existing discretionary authority" to impose these individualized conditions of supervision. *Utley*, 118 S.W.3d at 715 n.18. The copy of the Sex Offender Directives signed by Nunn

expressly states that the listed conditions are "guidelines" established for sex offenders that will apply "until my Officer and treatment provider, or the Board determines otherwise." Thus, the Sex Offender Directives were in the nature of "guidelines intended to provide a framework for the [agency's] exercise of pre-existing statutory discretion," *Utley*, 118 S.W.3d at 719, and their adoption did not run afoul of the ex post facto clause.

In any event, we reject Nunn's contention that the Sex Offender Directives inflicted greater punishment than the law allowed when the crimes were committed. *See Pruitt*, 510 S.W.3d at 411 (quoting *Calder*, 3 U.S. (3 Dall.) 386). In order to determine whether the punishment for criminal conduct has increased, we must identify the available punishment for the offenses at the time the defendant committed them. *Lay v. Comm'r, Tenn. Dep't of Corr.*, No. M2005-02245-COA-R3-CV, 2007 WL 2089742, at *4 (Tenn. Ct. App. July 10, 2007). We focus on "the standard of punishment prescribed by each statute, rather than the punishment actually imposed." *Doe v. Gwyn*, No. E2010-01234-COA-R3-CV, 2011 WL 1344996, at *11 (Tenn. Ct. App. Apr. 8, 2011). Pursuant to the existing statutes, Nunn was sentenced to community supervision for life with individualized conditions, and he remains under supervision for life with individualized conditions. The guidelines established by the Sex Offender Directives did not increase Nunn's punishment beyond what was prescribed when the crime was committed.[26]

Nunn also complains about the fact that he can now be punished for acts that were not crimes when he committed his offenses. He claims that an ex post facto violation exists because he can now be prosecuted for a criminal offense if he accesses the internet or possesses alcohol, when the conditions of supervision for regular parolees when he committed his offenses did not prohibit these same acts. However, these facts do not implicate the ex post facto clause. Again, the Tennessee Constitution provides that "laws made for the punishment of *acts committed previous to the existence of such laws*, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made." Tenn. Const. art. I, § 11 (emphasis added). The ex post facto clause would prohibit a "law that makes an action, *done before the passing of the law, and which was innocent when done*, criminal," *Pruitt*, 510 S.W.3d at 411, but that is not the situation before us. The Sex Offender Directives and Tennessee Code Annotated section 39-13-526 do not make any action criminal that was innocently taken by Nunn before the passing of the law.

The Court of Criminal Appeals rejected a similar argument in *State v. Gibson*, No. E2003-02102-CCA-R3-CD, 2004 WL 2827000, at *1 (Tenn. Crim. App. Dec. 9, 2004), *perm. app. denied* (Tenn. Mar. 21, 2005), where the defendant was convicted of one

---

[26]For the same reasons, we discern no merit in Nunn's argument that the 2012 statutory amendment transferring authority over the community supervision for life program to the Department of Correction has increased his punishment beyond what was prescribed at the time of his offenses.

count of failure to report to the Tennessee Bureau of Investigation sexual offender registry. On appeal, the defendant argued that "the imposition of additional criminal penalties amounted to increased punishment for his original sexual assault conviction in violation of the ex post facto provisions of both the United States Constitution and the Tennessee Constitution." *Id.* The Court of Criminal Appeals rejected this argument, explaining that his sentence was imposed not as additional punishment for his original sex offense, but rather for his separate offense of failing to timely file monitoring forms with the TBI, which did not violate any prohibition against ex post facto laws. *Id.* at *3. "'It is hornbook law that no ex post facto problem occurs when the legislature creates a new offense that includes a prior conviction as an element of the offense, as long as the other relevant conduct took place after the law was passed.'" *Id.* at *4 (quoting *Russell v. Gregoire*, 124 F.3d 1079, 1088-89 (9th Cir. 1997)). As such, the fact that the defendant's original conviction was one of several elements required in order to be convicted for the offense of failure to report to the sex offender registry was "of no consequence for an ex post facto analysis." *Id.* The same reasoning applies here. If Nunn is eventually convicted of the offense of knowingly violating a condition of his community supervision, it will be as punishment for a separate offense taking place after adoption of the Sex Offender Directives. The Department of Correction has not impermissibly altered the definition of criminal conduct in violation of the ex post facto clause.

## E.    UAPA

Finally, Nunn argues that the "Sex Offender Directives were not promulgated in compliance with the Administrative Procedures Act." The allegations in Nunn's amended complaint regarding the UAPA were vague. For Counts 13 and 14, his amended complaint alleged:

COUNT THIRTEEN

92. The rules and orders promulgated by the TDOC to which the Petitioner is subject were not adopted in conformity with the administrative procedures act. "Any agency rule not adopted in compliance with this chapter shall be void and of no effect and shall not be effective against any person or party nor shall it be invoked by the agency for any purpose." Tenn. Code Ann. § 4-5-216.

COUNT FOURTEEN

93. This Court must declare the rule or order invalid because the rules and orders violate constitutional provisions, exceed the statutory authority of the agency, were adopted without compliance with the rulemaking procedures provided for in this chapter or otherwise violates state or federal law. Tenn. Code Ann. § 4-5-223.

On appeal, Nunn added very little to this allegation. His brief claims that the "rules and orders promulgated by the TDOC to which the Petitioner is subject were not adopted in conformity with the Uniform Administrative Procedures Act." Nunn mentions that the Sex Offender Directives were created by the Sex Offender Treatment Board and enforced by the Board of Probation and Parole before the Department of Correction acquired jurisdiction over them. He then summarily declares, "It is this TDOC adoption and promulgation that was in direct contravention of the Administrative Procedures Act and thus the directives are void."

We decline to consider the merits of this issue. Nunn does not specify which "rules and orders"[27] he seeks to challenge or how they fail to comply with any particular provision of the UAPA. "The UAPA requires a state agency in Tennessee to follow uniform procedures when making rules." *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 311 (Tenn. 2005) (citing Tenn. Code Ann. § 4-5-201 et seq). The UAPA contains "detailed procedures govern[ing] public hearings on the content of proposed rules, the conduct of those hearings, approval of the rules by the Attorney General, filing of the rules with the Secretary of State, and publication in the administrative register." *Id.* Part 2 of the UAPA contains sections -201 through -231 regarding "Rulemaking and Publications," and Nunn only cites section -216 providing that an agency rule not adopted in compliance with this chapter shall be void.

"It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Sup.Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). "Parties must thoroughly brief the issues they expect the appellate court to consider." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009) (Koch, J., concurring in part and dissenting in part). "The adversarial system of justice is premised on the idea that 'appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before

---

[27]With several exceptions, the UAPA defines a "rule" as an "agency statement of general applicability that implements or prescribes law or policy or describes the procedures or practice requirements of any agency." Tenn. Code Ann. § 4-5-102(12). It defines an "order" as "an agency action of particular applicability that determines the legal rights, duties, privileges, immunities or other legal interests of a specific person or persons." Tenn. Code Ann. § 4-5-102(7). The brief filed by the appellees states, "Petitioner offers nothing in support of his claim that TDOC adopted or promulgated anything related to the sexual offender directives which are the subject of his community supervision, because they have not done so." The Department claims that it simply "determines which Directives are applied to an individual person on community supervision."

them.'" *Malmquist v. Malmquist*, No. W2007-02373-COA-R3-CV, 2011 WL 1087206, at *11 n.21 (Tenn. Ct. App. Mar. 25, 2011) (quoting *State v. Northern*, 262 S.W.3d 741, 767 (Tenn. 2008) (Holder, J., concurring in part and dissenting in part)). Because Nunn failed to develop more than a skeletal argument regarding "compliance with the Administrative Procedures Act," we do not reach the merits of this vaguely articulated issue.

## V. Conclusion

For the aforementioned reasons, the decision of the chancery court is hereby affirmed in part, reversed in part, and remanded for further proceedings. Costs of this appeal are taxed one-half to the appellees, Tennessee Department of Correction and the Attorney General, and one-half to the appellant, Craig Nunn, and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE