IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 15, 2018 Session

**JOHN N. MOFFITT v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Henderson County**
**No. 13-123-1 Roy B. Morgan, Jr., Judge**

_____

**No. W2018-01108-COA-R3-CV**
_____

Appellant appeals the trial court's denial of his petition for restoration of citizenship rights under Tennessee Code Annotated section 40-29-105. Appellant contends that the trial court's decision violates *ex post facto* protections by imposing a harsher sentence than that available at the time of his conviction. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, JJ., joined.

John N. Moffitt, Lexington, Tennessee, appellant, pro se.

Herbert H. Slatery, III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Rob Mitchell, Assistant Attorney General, for the appellee, State of Tennessee

**OPINION**

**I. Background**

The relevant facts are not in dispute. On or about September 6, 1989, Appellant John N. Moffitt was found guilty of first-degree murder. The murder occurred on November 21, 1988. On post-conviction review, the judgment was reversed and a new trial ordered. *Moffitt v. State*, 29 S.W.3d 51 (Tenn. Crim. App. 1999). On remand, Appellant pled guilty to Second Degree Murder on October 13, 2000, and received a

sentence of 10 years. ***State v. Moffitt***, No. W2001-00781-CCA-R3-CD, 2002 WL 818247 (Tenn. Crim. App. April 19, 2002), *perm. app. denied* (Tenn. Oct. 21, 2002). On October 19, 2000, the trial court entered Judgment declaring Mr. Moffitt "infamous" and releasing him "on time served." In July 2014, Appellant was convicted of reckless aggravated assault, for which he received a sentence of 4 years.

After serving his sentence for the aggravated assault conviction, on March 29, 2018, Appellant filed a petition for restoration of his citizenship rights. Appellant filed an amended petition on April 10, 2018, asserting that "the prior conviction for second degree murder was fully served." The State opposed the motion arguing that Appellant "had been rendered infamous by both the murder conviction and the aggravated assault conviction." The State further averred that Appellant had been convicted of DUI and Reckless Driving on several occasions, that he had violated orders of protection, and that he "had only been off probation or parole for a matter of weeks" prior to filing his petition. The trial court denied Appellant's petition by order of May 29, 2018. The trial court specifically held that Appellant was ineligible to have his citizenship rights restored, under Tennessee Code Annotated section 40-29-105(c)(2)(B), as a result of his murder conviction.

## II. Issue

The sole issue for review is whether the trial court's order denying Appellant's petition for restoration of citizenship rights violates *ex post facto* protections.

## III. Standard of Review

We first note that while we are cognizant of the fact that Appellant represented himself throughout these proceedings, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." ***Brown v. Christian Bros. Univ.***, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). This Court has held that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts." ***Hodges v. Tenn. Att'y Gen.***, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000); ***Paehler v. Union Planters Nat'l Bank, Inc.***, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997). Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." ***Young v. Barrow***, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003); ***Edmundson v. Pratt***, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); ***Kaylor v. Bradley***, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995).

Turning to the standard of review, because this case was tried by the court sitting without a jury, we review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates against those findings. ***McGarity v.***

*Jerrolds*, 429 S.W.3d 562, 566 (Tenn. Ct. App. 2013); *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, the weight of the evidence must "demonstrate . . . that a finding of fact other than the one found by the trial court is more probably true." *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court conducts a *de novo* review of the trial court's resolution of questions of law, with no presumption of correctness. *Kelly v. Kelly*, 445 S.W.3d 685, 691-92 (Tenn. 2014); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

To the extent the issue presented requires interpretation of Tennessee Code Annotated section 40-29-105, we are guided by the familiar rules of statutory construction. "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993)). "The text of the statute is of primary importance." *Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). A statute should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says. *See BellSouth Telecomm'ns., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997).

## IV. Analysis

This Court recently discussed deprivation of citizenship rights as follows:

> As an initial matter, the Tennessee Constitution provides that "[l]aws may be passed excluding from the right of suffrage persons who may be convicted of infamous crimes." Tenn. Const., art. IV, § 21. To that end, the Tennessee General Assembly enacted Tennessee Code Annotated section 40-20-112, which states: "Upon conviction for any felony, it shall be the judgment of the court that the defendant be infamous and be immediately disqualified from exercising the right of suffrage." *See also* Tenn. Code Ann. § 2-19-143 (providing that those convicted of infamous crimes in this state or under federal law shall not be permitted to vote unless such person has been pardoned by the appropriate authority or "the person's full rights of citizenship have otherwise been restored"), recognized as unconstitutional when applied retroactively by *May v. Carlton*, 245 S.W.3d 340, 345 (Tenn. 2008) (citing *Gaskin v. Collins*, 661 S.W.2d 865, 867 (Tenn. 1983) (holding that statute expanding the definition of infamous crimes for which felons are disenfranchised and applying that definition to disenfranchise felons regardless of when they were convicted violated constitutional provision prohibiting retroactive disenfranchisement under Tennessee constitutional provisions related to

suffrage)). The Tennessee Constitution further provides, however, that "the right of suffrage, as hereinafter declared, shall never be denied to any person entitled thereto, except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by court of competent jurisdiction." Tenn. Const., art. I, § 5. As such, those rendered infamous by the conviction of a crime are not permitted to vote following a judgment to that effect unless and until a pardon occurs or voting rights are restored.

*State v. Dixon*, No. W2017-01051-COA-R3-CV, 2018 WL 1168693, *2 (Tenn. Ct. App. March 3, 2018).

Tennessee Code Annotated section 40-29-105 provides for the restoration of citizenship rights following conviction for infamous crimes. As is relevant to the instant appeal, the statute provides:

(b) For all persons convicted of infamous crimes after July 1, 1986, but before July 1, 1996, the following procedures shall apply:

(1) A person rendered infamous or deprived of the rights of citizenship by the judgment of any state or federal court may have full rights of citizenship restored upon:

***

(B) Service or expiration of the maximum sentence imposed for the infamous crime; or
(C) Being granted final release from incarceration or supervision by the board of parole, or county correction authority;

(2) A person rendered infamous after July 1, 1986, by virtue of being convicted of one (1) of the following crimes shall never be eligible to register and vote in this state:

(A) First degree murder;

***

(c) The following procedure shall apply to a person rendered infamous by virtue of being convicted of a felony on or after July 1, 1996:

(2) . . .

- 4 -

(B) A person convicted of an infamous crime may petition for restoration upon the expiration of the maximum sentence imposed by the court for the infamous crime; provided, that a person convicted of murder, rape, treason or voter fraud shall never be eligible to register and vote in this state;

Here, the trial court denied Mr. Moffitt restoration of his citizenship rights by order of May 29, 2018. The trial court's order states, in relevant part:

Johnny Moffitt has a prior conviction for second degree murder and. . . T.C.A. § 40-29-105 (c)(2)(b) provides:

> A person convicted of an infamous crime may petition for restoration upon the expiration of the maximum sentence imposed by the court for the infamous crime; provided, that a person convicted of murder, rape, treason or voter fraud shall never be eligible to register and vote in this state

The Court finds that as a matter of statutory interpretation that the legislature intended to exclude all convictions for murder by using the broader term murder and not limiting the term to first degree murder as the legislature did in T.C.A. § 40-29-105(b)(2).

In this case the petitioner, Johnny Moffitt was originally convicted of first degree murder the procedural history of Johnny Moffitt's case is set forth in *Moffitt v. State*, 29 S.W.3d 51 stating:

> This appeal presents the post-conviction claim of ineffective assistance of counsel. In 1989, a Henderson County jury found the appellant, Johnny Moffitt, guilty of first degree murder and shooting into a dwelling. His convictions and sentences were affirmed by this court on direct appeal. In 1993, the appellant filed the instant post-conviction petition alleging that the failure of the trial court to instruct on the defense of alibi constituted a denial of federal and state due process and was the result of ineffective assistance of counsel. The post-conviction court denied relief. On appeal, a panel of this court found trial counsel's performance deficient and remanded to the post-conviction court for a determination of prejudice. On remand, the post-conviction court found no prejudice. This appeal presents the limited issue of whether the appellant was prejudiced by trial counsel's deficient performance. After review, we find prejudice. The appellant's convictions and sentences are reversed and vacated and this

case is remanded to the trial court for a new trial.

Upon remand the petitioner entered a guilty plea on October l3th, 2000 reserving a certified question of law which was taken up[] by the Court of Criminal Appeals in **State v. Moffitt**, 2002 Tenn. Crim. App. LEXIS 362 wherein the Court stated:

> The defendant, Johnny Moffitt, entered a plea of guilty to second degree murder. The trial court imposed a Range I sentence of 10 years. By agreement, the defendant reserved a certified question of law. See Tenn. R. Crim. P. 37. The issue presented in this appeal is whether the trial court should have dismissed the charge due to the loss or destruction of evidence. The judgment is affirmed.

Because the defendant was convicted on October 13th, 2000 and the judgment entered October 19th, 2000 the provisions of T.C.A. § 40-29-105([c])[(2)](B) apply to the petitioner.

Because the petitioner has been convicted of murder after July lst, 1996, he is not eligible for restoration of citizenship.

As set out in context above, Tennessee Code Annotated section 40-29-105(c)(2)(B) provides that "a person convicted of murder . . . shall never be eligible to register and vote in this state." Mr. Moffitt contends that the trial court erred in applying section 40-29-105(c)(2)(B). He contends that the applicable statutory provision is section 40-29-105(b)(2), which denies eligibility for restoration of citizenship rights where the petitioner has been convicted of "first degree murder," as opposed to the broader term, "murder," i.e., any murder, used in 40-29-105(b)(2)(A). Mr. Moffitt argues that subsection (c) is inapplicable because "the sentencing [on the second-degree murder conviction] took effect [o]n September 6, 1989," and "T.C.A. Code 40-29-105 clearly states that a[n infamous] crime committed between July 2, 1986 and July 1, 1996 would be governed by that [section, i.e., subsection (b)], and the [infamous] crime would be First Degree Murder . . . and did not include a conviction for Second Degree Murder. . ."

At oral argument before this Court, Mr. Moffitt intimated that, as part of his plea agreement for Second Degree Murder, the District Attorney agreed that the effective date of the Second Degree Murder conviction would be September 6, 1989 (the date of Mr. Moffitt's conviction for First Degree Murder). Thus, Mr. Moffitt contends that, by virtue of such agreement, he is entitled to restoration of his citizenship rights, under Tennessee Code Annotated section 49-29-105(b)(2), by application of the September 6, 1989 date. We have reviewed the record and the judgment entered on the Second Degree Murder

plea, and we find no reference to any agreement mandating the use of September 6, 1989 as the applicable date. As noted above, the only notation on the judgment is that Mr. Moffitt is released "on time served." A trial court speaks through its orders. *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1997). Here, the trial court's order is silent concerning any agreement regarding the effective date of the Second Degree Murder Conviction.

In the absence of any alternative agreement, insofar as Mr. Moffitt argues that section 40-29-105(b)(2) is applicable based on his 1989 conviction for First Degree Murder, that conviction was "reversed and vacated" by the appellate court in *State v. Moffitt*, 2002 WL 818247. This ruling rendered the 1989 conviction null and void. In other words, the 1989 conviction is of no effect. As such, the only conviction date is October 13, 2000, the date that judgment was entered on Mr. Moffitt's Second Degree Murder conviction. Section 40-29-105(c) clearly applies to "a person rendered infamous by virtue of being **convicted** of a felony on or after July 1, 1996" (emphasis added).[1]

We now turn to Mr. Moffitt's argument that the trial court's application of section 40-29-105(c)(2)(B) "inflicted a greater punishment [on Mr. Moffitt] than the law annexed to the crime when committed," thus violating ex post factor protections. This Court recently discussed ex post facto law in *Nunn v. Tennessee Dep't of Correction*, 547 S.W.3d 163, 202 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. March 15, 2018):

> The Tennessee Supreme Court has held that "the ex post facto clause of the Tennessee Constitution has the same definition and scope as the federal ex post facto clause." *State v. Pruitt*, 510 S.W.3d 398, 402 (Tenn. 2016). The United States Constitution provides that no state shall pass any ex post facto law. U.S. Const. art. I, § 10, cl. 1. The Tennessee Constitution provides that "laws made for the punishment of acts committed previous to the existence of such laws, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made." Tenn. Const. art. I, § 11. "The animating principle of the prohibition against ex post facto laws is basic fairness[.]" *Pruitt*, 510 S.W.3d at 410. Four categories of laws are included in the constitutional prohibition against ex post facto laws:
>
> > 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and

---

[1] From his appellate brief, it appears that Mr. Moffitt may also argue for application of section 40-29-105(b)(2) based on the 1988 **commission** of his offense. We note that neither section 40-29-105(c)(2)(B) nor section 40-29-105(b)(2) focus on the date the offense was "committed." Rather, as set out in context above, the plain language of both sections focuses on the date of the petitioner's "conviction." *Owens*, 908 S.W.2d at 926; *Mills*, 360 S.W.3d at 368; *BellSouth*, 972 S.W.2d at 673. As such, Mr. Moffitt may not rely on the commission date of his crime, i.e., 1988, as the applicable date.

punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

*Id*. at 411 (quoting ***Calder v. Bull***, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)). In order to come within the prohibition of the ex post facto clause, a law must be retrospective (applying to events occurring before its enactment) and it must disadvantage the offender (by altering the definition of criminal conduct or increasing the punishment for the crime). *Id*. at 416-17.

In ***Nunn***, this Court rejected appellant Mr. Nunn's "contention that the Sex Offender Directives inflicted greater punishment than the law allowed when the crimes were committed." ***Nunn***, 547 S.W.3d at 204. Mr. Nunn specifically argued that "an ex post facto violation exists because he can now be prosecuted for a criminal offense if he accesses the internet or possesses alcohol, when the conditions of supervision for regular parolees when he committed his offenses did not prohibit these same acts" *Id.* at 205. We held that the facts asserted by Mr. Nunn did not implicate the ex post facto clause. *Id.* In so holding, we reiterated:

Again, the Tennessee Constitution provides that "laws made for the punishment of acts *committed previous to the existence of such laws*, and by them only declared criminal, are contrary to the principles of a free Government; wherefore no Ex post facto law shall be made." Tenn. Const. art. I, § 11 (emphasis added). The ex post facto clause would prohibit a "law that makes an action, done before the passing of the law, and which was innocent when done, criminal," [***State v.***] ***Pruitt***, 510 S.W.3d [398,] at 411 [(Tenn. 2016)], but that is not the situation before us. The Sex Offender Directives and Tennessee Code Annotated section 39-13-526 do not make any action criminal that was innocently taken by Nunn before the passing of the law.

*Id.* The same is true in the instant case. Unlike Tennessee Code Annotated section 40-20-112, which removes the right of suffrage, Tennessee Code Annotated section 40-29-105 does not impose any punishment. Rather, section 40-29-105 merely sets out the various procedures for pursuing restoration of one's citizenship rights after he or she has been punished (under section 40-20-112) by removal of same. As such, the trial court's

application of the statute cannot form the basis for an ex post facto violation based on the imposition of a harsher punishment than originally applicable.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Cost of the appeal are assessed to the Appellant, John N. Moffitt. Because Mr. Moffitt is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE